**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| BRIAN C. DAVISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-540 |
| | ) | (ATJ/MSN) |
| DEBORAH ROSE, TRACY STEPHENS, | ) | |
| ERIC HORNBERGER, JILL TURGEON, BRENDA | ) | |
| SHERIDAN, JEFFREY MORSE, WILLIAM FOX, | ) | |
| KEVIN KUESTERS, JOY MALONEY, ERIC | ) | |
| DEKENIPP, and SUZANNE DEVLIN, | ) | |
| | ) | |
| In their official and individual capacities, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| LOUDOUN COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS'  MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS FILED PURSUANT TO FED. R. CIV. P. 12(b) (1) AND (6)**

COME NOW the defendants Deborah [sic] Debra Rose ("Rose"), Tracy Stephens ("Stephens"), Eric Hornberger ("Hornberger"), Jill Turgeon ("Turgeon"), Brenda Sheridan ("Sheridan"), Jeffrey Morse ("Morse"), William Fox ("Fox"), Kevin Kuesters ("Kuesters"), Joy Maloney ("Maloney"), Eric Dekenipp ("Dekenipp"), Suzanne Devlin ("Devlin") and Loudoun County School Board ("LCSB" or "School Board"), by counsel, and for their Memorandum in Support of Motion to Dismiss all claims set forth in the Complaint, filed herein pursuant to Fed. R. Civ. P. 12(b)(1) and (6), state as follows:

## I.    STATEMENT OF PROCEEDINGS

The plaintiff, Brian C. Davison ("Davison"), alleges that the defendants violated his First and Fourteenth Amendment Constitutional rights related to speaking at School Board meetings, Facebook postings, and no trespass letter banning him from his children's elementary school, Seldons Landing, which is located in Loudoun County, Virginia.   Submitted with defendants' Motion to Dismiss and Memorandum are multiple exhibits ("Exh." or "Exhs.") which include, 1) public record pleadings filed in the Circuit Court of Loudoun County ("Circuit Court") and General District Court of Loudoun County ("GDC"); 2) published recordings from School Board meetings, public comments portion; 3) published School Board Policies and By-Laws and School Board Agenda items.  These documents are identified as follows:

LCSB Policies/By-Laws, 2010, LEGAL STATUS, AUTHORITY, POWERS AND DUTIES (Exh. 1A); Policy 2310 COMMITTEES OF THE SCHOOL BOARD (Exh. 1B); §2-22, Meeting Procedures (Exh. 1C); §2-24 Order of Business, Quorum, Rules, Voting (Exh. 1D); §2-29, Participation by the Public (Exh. 1E).   Video-taped recordings of the speakers who participated at School Board meetings on June 23, 2015 and March 14, 2016 (Exh. 2A); recordings of Davison's participation at public comment portions of School Board meetings on May 12, 2015, June 9, 2015, June 23, 2015, September 22, 2015, October 13, 2015, October 27, 2015, November 5, 2015, January 28, 2016, February 9, 2016, March 8, 2016, May 14, 2016, March 26, 2016, April 12, 2016 (Exh. 2B).   LCSB's published Agendas for School Board meetings on May 12, 2015, June 9, 2015, June 23, 2015, September 22, 2015, October 13, 2015, October 27, 2015, November 5, 2015, January 28, 2016, February 9, 2016, March 8, 2016, March 14, 2016, March 28, 2016 and April 12, 2016 (Exh. 1F).

2

Public record pleadings from litigation filed by Davison including: Petition for Writ of Mandamus, Case No. 93308, Circuit Court, filed on April 3, 2015; Amended Petition for Writ of Mandamus, Case No. 93308, Circuit Court filed on April 17, 2015 (Exh. 4); transcript from Circuit Court hearing, Case No. 93308, April 14, 2015 (Exh. 5); transcript from Circuit Court hearing, Case No. 93308, April 23, 2015 (Exh. 6); transcript from Circuit Court hearing Case No. 93308, April 29, 2015 (Exh. 7); Respondents' Petition for Relief filed in Circuit Court hearing Case No. 93308, on April 27, 2015 (Exh. 8); Davison's Memorandum in Opposition to Petition for Relief filed in Circuit Court Case No. 93308 on May 28, 2015 (Exh. 9); Order entered in Circuit Court Case No. 93308 on June 3, 2015 (Exh. 10); Order entered in Circuit Court Case No. 93308 on June 4, 2015; transcript from Circuit Court hearing, June 3, 2015 in Case No. 93308 (Exh. 11); Davison's Notice of Appeal to the Supreme Court of Virginia filed in Circuit Court Case No. 93308 on June 23, 2015 (Exh 12); Petition for Appeal filed by Davison in the Supreme Court in Record No. 15-1340 (Exh. 13); Appellees' (Respondents') Brief in Opposition to Davison's Petition for Appeal from judgment entered in Circuit Court Case No. 93308 (Exh. 14); Supreme Court's refusal of Davison's Petition for Appeal (Exh. 15); Supreme Court's denial of Davison's Petition for Re-hearing (Exh. 16); Petition for Writ of Mandamus filed in Circuit Court on June 25, 2015,  Case No. 94775 (Exh. 17); Demurrer and Motion to Dismiss the Petition for Writ of Mandamus filed by Wayde Byard in Circuit Court Case No. 94775 on July 7, 2015 (Exh. 18); Demurrer and Motion to Dismiss the Petition for Writ of Mandamus filed by Hornberger, Kuesters, Sheridan, Morse, Tom Reed ("Reed"), Fox, Jennifer Bergel ("Bergel"), Rose, Turgeon, LCSB, and Stephen L. DeVita ("DeVita") in Circuit Court Case No. 94775 filed on July 24, 2015 (Exh. 19); transcript from court hearing, June 30, 2015, in Circuit Court Case No. 94775 (Exh. 20); transcript from court hearing, August 5, 2015, in Circuit Court Case No. 94775 (Exh. 21);

Order entered in Circuit Court Case No. 94775 on August 5, 2015 (Exh 22); Notice of Appeal from Order entered August 15, 2015 in Circuit Court Case No. 94775 (Exh. 23); Petition for Writ of Mandamus filed in the Circuit Court on June 16, 2015, Case No. 94635 (Exh. 24); Order entered by the Circuit Court in Case No. 94635 on June 25, 2015 (Exh. 25); transcript from hearing, June 25, 205, Circuit Court Case No. 94635 (Exh. 26); Complaint for Declaratory Judgment filed in Circuit Court Case No. 94902 on July 6, 2015 (Exh. 27); Demurrer filed in Circuit Court Case No. 94902 on July 24, 2015 (Exh. 28); Davison's Opposition to Demurrer filed in Circuit Court Case No. 94902 on July 28, 2015 (Exh. 29); Motion for Sanctions filed by Hornberger in Circuit Court Case No. 94902 (Exh. 30); Davison's Opposition to the Motion for Sanctions filed in Circuit Court Case No. 94902 (Exh. 31); transcript from court hearing, November 5, 2015, in Circuit Court Case No. 94902 (Exh. 32); Order entered in Circuit Court Case No. 94902 on November 5, 2015 (Exh. 33); Notice of Appeal of November 5, 2015 Order, filed on November 16, 2015 (Exh. 34); Letter Opinion issued by the Circuit Court in Case No. 94902 dated December 3, 2015 (Exh. 35); Order entered in Circuit Court Case No. 94902 on January 8, 2016 (Exh. 36); Notice of Appeal filed to January 8, 2016 Order (Exh. 37); Petition for Appeal filed in the Supreme Court of Virginia from Orders entered in Circuit Court Case No. 94902 (Exh. 38); Brief in Opposition to Davison's Petition for Appeal filed on February 22, 2016 (Exh. 39); Petition for Judicial Review filed in Circuit Court Case No. 97072 (Exh. 40); Response to Petition for Judicial Review and Motion to Dismiss filed by LCSB in Circuit Court Case No. 97072 on November 23, 2015 (Exh. 41); Motion to Dismiss Petition for Judicial Review and Strike Hearing Dates set for April 25, 2016 in Circuit Court Case No. 97072 (Exh. 42); Motion for Preliminary Injunction filed by Davison in Circuit Court Case No. 97072 on November 25, 2015 (Exh. 43); Response to Motion to Dismiss filed by Davison in Circuit Court Case No. 97072

4

on November 30, 2015 (Exh. 44); Final Order of Dismissal entered by the court in Circuit Court Case No. 97072 on December 4, 2015 (Exh. 45); transcript from court hearing, December 4, 2015, in Circuit Court Case No. 97072 (Exh. 46); Notice of Appeal filed by Davison to December 4, 2015 Order entered in Circuit Court Case No. 97072 (Exh. 47); Petition for Appeal to the Supreme Court filed on March 1, 2016 by Davison to the December 4, 2015 Order entered in Circuit Court Case No. 97072 (Exh. 48); LCSB's Brief in Opposition to Petition for Appeal filed in Supreme Court on March 21, 2016 (Exh. 49); Petition for Judicial Review filed in Circuit Court Case No. 98468 on December 22, 2015 (Exh. 50); LCSB's Response to Davison's Petition for Review filed in Circuit Court Case No. 98468 on January 27, 2016 (Exh. 51); Petitioner's Reply to LCSB's Response to Petition for Judicial Review filed in Circuit Court Case No. 98468 on February 16, 2016 (Exh. 52); Praecipe with Administrative Record of LCSB proceedings related to no trespass letter filed pursuant to Virginia Code § 22.1-87 in Circuit Court Case No. 98468 on March 4, 2016 (Exh. 53); Praecipe with second addendum to the Administrative Record filed pursuant to Virginia Code § 22.1-87 in Circuit Court Case No. 98468 on June 3, 2016 (Exh. 54); Petition for Injunction filed by Davison against Morse and Sheridan in the GDC, Case No. 15008313-00  (Exh. 55); GDC order denying Davison's Petition for Injunction and Dismissing Case entered October 28, 2015 (Exh. 56); Petition for Mandamus filed against the Virginia Department of Education ("VDOE") in the Circuit Court City of Richmond, in which proceeding LCSB intervened (Exh. 57); Orders entered in the Richmond case (Exh. 58); Notices of Appeal to the Supreme Court filed in the Richmond case (Exh. 59).

## II.   STATEMENT OF FACTS

Davison has sued the School Board, present School Board members, two former School Board members, and two School Board employees, alleging violation of his First and Fourteenth

Amendment rights related to alleged denial of free speech and banning him from his children's elementary school located in Loudoun County, Virginia. (Compl. ¶¶ 1-8, 10, 28, 29, 30).  He also sues two School Board members and two School Board employees alleging defamation and violation of state law.  (Compl., Count 8).  Throughout the Complaint he alternatively argues and states in conclusory fashion that various School Board members or employees have violated state and federal statutes.  (Compl. ¶¶ 11, 15-17, 23).  Davison is a regular speaker at LCSB meetings during the public comments portion; regularly blogs about complaints, criticism and conflicts he has with individuals in the community, including School Board members and personnel; created a Facebook and Twitter account for the purpose of posting hundreds of articles and comments in addition to posting thousands of comments in various on-line forums such as comment sections of on-line newspapers.  (Compl. ¶¶ 23, 24, 186).  He frequently speaks on topics related to student performance, "lack of transparency and local government," alleged undisclosed conflicts of interest on the part of School Board members, school budgets and violations of federal privacy laws, in addition to calling for resignation of LCPS officials on a regular basis and alleging violations of the Virginia Freedom of Information Act ("FOIA").  (Compl. ¶¶ 23, 24 a., b., c.). Davison alleges that he has disagreed with other commentators or ridiculed the defendants and other LCSB employees for "their refusal to discuss issues or efforts to suppress information." (Compl. ¶ 25). Davison stated that he would take his "disagreements to court or suggested that he would post the disagreement in a publicly viewable on-line forum."  (Compl. ¶ 26).

Davison alleges that he was "banned" from individual School Board members' Facebook pages, including banned from a present School Board member's Facebook page before he was elected to the School Board. (Compl. ¶ 30). He publicized these "bannings" and continued to re-post and post negative comments on Loudoun  County Public Schools ("LCPS") Facebook page,

after which he claims LCPS "stopped accepting new comments on its Facebook page for the duration of the 2015 election cycle rather than restore Davison's critical comments." (Compl. ¶ 30 h.).   After the election, Davison alleges LCPS restored the ability for all to comment on Facebook and on September 10, 2015 LCPS posted "terms and conditions" on its Facebook page "claiming the page represented neither a public, limited public or even designated forum," and that "any citizen who violated" the conditions more than three times would be permanently banned. *Id.*

Davison alleges that at "various public hearings" defendants Hornberger and Rose have interrupted his comments "to such an extent that the interruptions consumed large portions of Davison's allotted speaking time and materially limited Davison's participation in the public forum." (Compl. ¶ 30 m.).  He complains about the presence of deputy sheriffs at School Board meetings, alleged "conspiracy" to "surveil" him, and about individual School Board members contacting his employer, his parents, and/or filing a "criminal complaint" against him with the Loudoun County Sheriff's Office alleging that he made threatening comments against defendant Rose and her children, and that an LCPS employee "would report" him to Child Protective Services ("CPS").  (Compl. ¶¶ 30 d., o., s.,).

In September and October 2015 Davison was served with letters stating that he was "barred from entry" onto Seldens Landing property for the remainder of the school year 2015-2016. (Compl. ¶ 30 x., Exhs. 1, 2 to the Complaint).   He was issued a third letter dated October 14, 2015.  (Compl. ¶ 30 x., Exh. 3 to the Complaint).  The third letter outlined LCSB's Policy §2-20 for appeals of administrative decisions and Davison requested an appeal on October 4, 2015. Davison had multiple communications with LCSB personnel and School Board members requesting recision of the ban. (Compl. ¶¶ 32, 33, 34). Following completion of the administrative

level reviews of his appeal from the October no trespass letter, an appointed School Board committee held a hearing on November 23, 2015, for which Davison was provided advance notice and which he attended, the committee received and reviewed the record submitted in support of principal Stephens' no trespass letter, and voted to uphold the no trespass letter/ban. (Compl. ¶ 32 c.; Exh. 53, pp. 1-233, Exh. 54, pp. 234-238).   Davison appealed the School Board action to the Circuit Court by filing a Petition for Review pursuant to Virginia Code § 22.1-87. (Compl. ¶ 38; Exh. 50).  In accordance with the statute, LCSB filed the administrative record with the Circuit Court and the matter remains pending.  (Exhs. 53, 54).[1]

Additional suits filed in state court by Davison against either LCSB, School Board members or personnel include the following: Petition for Mandamus alleging multiple FOIA violations, for which multiple hearings were held, after which the court dismissed the matter finding in favor of the defendants and ordering sanctions against Davison in the amount of $500.00 payable to the state literacy fund from which Davison filed an appeal to the Supreme Court of Virginia.  (Exhs. 4-14) The appeal was denied, after which he filed a Petition for Re-hearing, which was also denied.  (Exhs. 15, 16).  Davison filed another Mandamus action against LCSB and multiple School Board members for alleged FOIA violations which was also dismissed by the court in favor of the defendants, after which Davison filed a Notice of Appeal but pursued the matter no further. (Exhs.17-23).  Davison filed another Mandamus action against individual School Board members, LCSB, and DeVita alleging multiple FOIA violations and seeking sanctions. (Exh. 24). A hearing was held in the Circuit Court on June 25, 2015, and the matter was dismissed. (Exhs. 25, 26).

---

[1]Davison earlier filed a Petition for Judicial Review with the Circuit Court on October 28, 2015 which was dismissed as premature for failure to exhaust administrative remedies because, at that time, School Board action, as defined under Virginia Code § 22.1-87, had not occurred. He appealed and the matter is pending in the Supreme Court of Virginia.  (Exhs. 40-49).

Davison filed a Complaint for Declaratory Judgment against Hornberger alleging violation of Virginia Code §§ 2.2-3100, *et seq.,* Conflict of Interest Act, to which Hornberger filed a Demurrer and Motion for Sanctions pursuant to Virginia Code § 8.01-271.1. (Exhs. 27-31). Hearing was held on November 5, 2015, after which the court dismissed Davison's Complaint and took under advisement the sanctions motion.  (Exhs. 32, 33).  The court issued a letter opinion on December 3, 2015, awarding sanctions in the amount of $6,802.40 against Davison and final Order was entered on January 8, 2016, which, by agreement, was paid into the court pending Davison's appeal which he first noted on November 16, 2015, and later filed as to the sanctions ruling on January 22, 2015.  (Exhs. 34-37).  The matter is pending in the Supreme Court of Virginia.  (Exhs. 38, 39).

Davison sued School Board members Sheridan and Morse in GDC alleging FOIA violations involving illegal meetings. (Exh. 55). After court hearing, the Complaint was dismissed with finding in favor of Sheridan and Morse, which matter Davison did not appeal.  (Exh. 56).

Davison filed suit in the Circuit Court City of Richmond against the VDOE for alleged FOIA violations in which case LCPS was allowed to intervene. The court entered Orders in favor of Davison which are now on appeal to the Supreme Court of Virginia. (Exhs. 57-59).

## III.    LAW AND ARGUMENT

### A.    Standard of Review

The court, "in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a complaint as admitted and review them in the light most favorable to the plaintiff." *De Sole v. United States*, 947 F. 2d 1169, 1171 (4th Cir. 1991).  "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F. 3d 250, 255 (4th Cir. 2009). Under the standard established by *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), compliance with Fed. R. Civ. P. 8(a)(2) requires more than "labels and conclusions," and a complaint must "state a claim to relief that is plausible on its face." *Id.* Facts that are merely consistent with a defendant's liability are insufficient to state a plausible claim. *Id.* In order to survive a Motion to Dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d at 180 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). It is the court's obligation to "determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." *Monroe v. City of Charlottesville,* 579 F.3d 380, 386 (4th Cir. 2009)(quoting *Andrew v. Clark,* 561 F.3d 261,266 (4th Cir. 2009))(internal quotation marks omitted).

In *Twombly*, the Court rejected the prior rule, set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that *Conley's* "no set of facts" standard had "earned its retirement" and the "phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563. Instead, the *Twombly* court stated that Fed. R. Civ. P. 8 requires a greater showing - a complaint must present enough facts to state an entitlement to relief that is "plausible" on its face. *Id.* at 570. In determining whether subject matter jurisdiction exists under Fed. R. Civ. P. 12(b)(1), "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*,

926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

Normally, in resolving a Rule 12(b)(6) motion, the court does not consider matters outside the pleadings; however, the court may consider documents integral to the Complaint or specifically referenced by it without converting the motion into one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). In this case, the court is entitled to consider the public record pleadings, video recordings of School Board meetings, School Board's published Policies and By-Laws in deciding defendants' Motion because it may consider not only facts contained in the Complaint, but also those either found in documents referred to in the Complaint or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and thus properly subject to judicial notice under Fed. R. Evid. 201." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (internal quotations omitted). *See also*, *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176,180 (4th Cir. 2009). The video recordings of School Board meetings should also be admissible in this proceeding because Davison references both numerous times in his Complaint.

### B. Davison's claims against the defendants are preluded under the *Rooker-Feldman* and *Younger* abstention doctrines.

The *Rooker-Feldman* doctrine stands for the principle that, of all the federal courts, only the United States Supreme Court has appellate jurisdiction over state court judgments, and a litigant in state court must find a state court remedy, or obtain relief from the Supreme Court. *Rooker v. Fidelity Trust, Co.*, 263 U.S. 413, 415 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486-87 (1983); *Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). As recognized by the Court, "a state-court decision is not reviewable by lower federal courts. . ." *Skinner v.*

11

*Switzer*, 131 S. Ct. 1289, 1291 (2011). The doctrine applies in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The question one must ask when determining whether the *Rooker-Feldman* doctrine applies is, does the plaintiff that lost in state court seek review of a state court judgment that hurt him. *Sheetz v. Norwood*, 608 Fed. Appx. 401, 404 (7th Circuit, 2015).  If the injury complained of arises from the state court's judgment, *Rooker-Feldman* compels this court to find that there is no jurisdiction.  *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2004).

Multiple allegations raised by Davison throughout his Complaint are the subject of state court filings which were resolved in favor of one or more of the defendants, including LCSB, Hornberger, Sheridan, Morse and other School Board members; including appeal to the Supreme Court of Virginia with  final resolution by that court, and should not be subject to retrial in this case. Dismissal under the *Rooker-Feldman* doctrine is required despite the fact that plaintiff's allegations involve constitutional issues. State courts are as competent as federal courts to decide such issues as directly related to the state court's decisions. *Huffman v. Pursue Ltd.*, 420 U.S. 592, 611 (1975) (rejecting the argument that state judges will not be faithful to their constitutional responsibilities); *Rooker*, 263 U.S. at 416 (federal district court lacks jurisdiction to review allegations that state judgment was rendered in violation of due process, equal protection, and contract clause of the Federal Constitution); *Feldman,* 460 U.S. at 486-87 (federal district court lacks jurisdiction to review claim that Court of Appeals acted arbitrarily, capriciously, unreasonably, or discriminatorily in denying petitions for waiver of bar admission rule). Under the *Rooker-Feldman* doctrine, parties may appeal state court decisions to the state's highest court

and then to the United States Supreme Court if a federal constitutional question is presented, but parties cannot obtain "horizontal" review of a state court decision in federal court. *Rooker, supra,* 263 U.S. at 416. For these reasons, Davison's multiple allegations related to claims or complaints he previously raised against LCSB and multiple School Board members in concluded state court proceedings, should be dismissed in this case.

Davison's attempted claims as set forth under Counts 1, 2, 3, 4, 5, 6, and 7, are also the subject of a pending lawsuit in the Circuit Court. (Exhs. 50-54). The suit was filed by Davison on December 22, 2015 (Exh. 50) under Virginia Code § 22.1-87[2]. Pursuant to the statute, the School Board's administrative record was filed with the court (Exhs.53, 54) and contains the information and documents upon which the School Board's upholding of the no trespass letter was based. Any Order entered in the Circuit Court case will constitute a final disposition of the proceeding and can be appealed to the Supreme Court of Virginia.

Parents aggrieved by an action of the school board may petition the circuit court to review that action subject to Virginia Code § 22.1-87, which provides a 30-day period after the action complained of within which a valid petition must be filed and sets forth the scope and standard of review in such proceedings. The provisions of § 22.1-87 are strictly construed. *Town of Leesburg v. Giordano,* 276 Va. 318, 324 (2008)(statutory 30 day limitation period for review requires court to strictly construe a statute). There is sound reasoning behind providing only a limited judicial

---

[2]Virginia Code Ann. § 22.1-87 provides that any parent, custodian, or legal guardian of a pupil attending the public schools in a school division who is aggrieved by an action of the school board may, within thirty days after such action, petition the circuit court having jurisdiction in the school division to review the action of the school board. Such review shall proceed upon the petition, the minutes of the meeting at which the school board's action was taken, the orders, if any, of the school board, an attested copy of the transcript, if any, of any hearing before the school board, and any other evidence found relevant to the issues on appeal by the court. The action of the school board shall be sustained unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion.

review of school board decisions because otherwise every administrative decision made by school board employees would be subject to inquiry by the courts thereby creating what the legislature and the Supreme Court of Virginia have sought to avoid--courts overseeing the operation of a school division. *Sch. Bd. v. McConnell*, 215 Va. 603, 607 (1975)(the court does not review the merits of the School Board's decision, and may not second-guess the School Board's judgment). Davison should not be allowed to side-step the state court proceeding he initiated in order to avoid the mandated provisions of § 22.1-87.

The power to operate, maintain, and supervise public schools in Virginia is within the exclusive jurisdiction of school boards. Va. Const. Art. VIII, § 7*; Bristol Va. School Bd. v. Quarles,* 235 Va. 108, 119 (1988). Virginia school boards are "vested by the Virginia Constitution with exclusive authority over supervision of schools." *Collins v. Prince William County Sch. Bd..,* 2004 U.S. Dist. LEXIS 28298, (E.D. Va. 2004), aff'd  unpub'd opinion, 142 Fed. Appx. 144 (4th Cir. 2005).  The Supreme Court of Virginia has recognized that school boards act independently of, and should be free from certain interference by, other branches of the government. E.g., *Bd. of Supervisors of Chesterfield County v. County Sch. Bd.,* 182 Va. 266, 275 (1944); *Sch. Bd. v. Parham,* 218 Va. 950, 958 (1978).

Accordingly, defendants move the court to abstain from making any decision regarding plaintiff's claims in this case pursuant to the doctrine established by the Supreme Court of the United States in *Younger v. Harris,* 401 U.S. 37 (1971). The pending state court proceedings satisfy the requirements in *Younger* for abstention by this court. First, there are pending state court proceedings in which both the plaintiff and multiple defendants, including LCSB and School Board members, are involved; second, there are important state and local governmental interests involved in the adjudication of these issues based on the provisions of § 22.1-87, FOIA,

Virginia Code §§ 2.2-3700, *et seq.,* and the State and Local Government Conflict of Interests Act, Virginia Code §§ 2.2-3100, *et seq.,* third, plaintiff has had an adequate opportunity to address his claims in the state court proceedings. *Colonial First Props. v. Henrico County,* 236 F. Supp.2d 588, 593  (E.D. Va 2002)*.* The individual School Board members should also be entitled to dismissal of the claims raised in Counts 1 through 7. *Mears v. Town of Oxford, Md.,* 762 F.2d 368, 371 n.3 (4th Cir. 1985)(town employees sued in their official capacity as representatives of the town were in privity with town in prior suit)*; Headley v. Bacon,* 828 F.2d 1272, 1279 (8th Cir. 1987)("Litigation involving the government is generally binding with respect to government officials who are sued in their official capacities in later actions.")

      **C.**     **Davison has failed to state claims for violation of his First and Fourteenth Amendment or Equal Protection rights, and failed to assert substantial federal claims thereby depriving this court of subject matter jurisdiction.**

The burden is on Davison to demonstrate that federal court jurisdiction exists in this case. *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999)(citing *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942) and *Goldsmith v. Mayor & City Council of Baltimore,* 845 F.2d 61, 64 (4th Cir. 1988)). "The mere assertion of a federal claim is not sufficient to obtain jurisdiction. . . ." *Id.* (citing *Davis v. Pak,* 856 F2d 648, 650 (4th Cir. 1988)(dismissal of "§ 1983 claims for lack of subject matter jurisdiction because the federal claims were insubstantial and were pretextual state claims.")) "Federal jurisdiction requires that a party assert a *substantial* claim." *Id.* (citing *Hagans v. Lavine,* 415 U.S. 528, 536 (1974)).

Davison brings "wholly frivolous federal claims . . . as a pretext to" litigate what are actually state law issues which have already been litigated in state court, remain pending, or are on appeal in state court. *Id.,* at 655. The record before the court on defendants' Motion to Dismiss contains numerous public record pleadings of multiple proceedings Davison filed over

the past year and half against multiple defendants complaining about the same issues complained of in this suit i.e. interruptions at public school board meetings; no trespass letters; removing him or deleting comments from individual School Board members' Facebook pages; refusal to engage him in debate initiated by email or blog postings; alleged FOIA violations; violation of Virginia conflict of interest laws; among other claims.

In *Lovern,* the court cited to Virginia Code § 22.1-87 as the appropriate recourse the plaintiff/parent had in which to litigate his claims in state court i.e., ban from his child's school because of "continued pattern of verbal abuse and threatening behavior toward school officials." 190 F.3d at 655 n. 11.  In that case, the parent had not resorted to state court, but should have, rather than attempt to litigate state court issues in the federal courts. *Id.* at 655. This is exactly what Davison is seeking to do by bringing his multiple claims which were either already litigated or are the subject of pending litigation and appeals in state court.

This is not a case where Davison was removed, ejected, or escorted from any School Board meetings; he regularly spoke and continues to speak at meetings and posts on Facebook and Twitter; any brief interruptions of his comments at meetings was due to "reasonable time, place, and manner restrictions" which were "content-neutral and . . . 'narrowly tailored' to serve a significant governmental interest" or due to Davison's going off-topic, raising irrelevant matters, and "manner of delivery," including "conduct that significantly violates generally or specially established rules of parliamentary order, and 'disrupts' by that means the orderly conduct of a meeting." *Collinson v. Gott,* 895, 994 F.2d 1000 (4th Cir. 1990)(citations omitted). Any interruptions were of short duration and properly addressed and/or controlled by Chairman Hornberger for the purpose of avoiding "disruption of the orderly conduct of the meeting." *Id.; Steinberg v. Chesterfield County Planning Commission,* 527 F.3d  377, 384-88 (4th Cir. 2008).

16

Davison freely admits to regularly publicizing his commentaries on multiple subject matters and criticism of LCSB, including School Board members and employees, through multiple media and other sources. Compl. ¶¶ 23, 24 (including all sub-paragraphs), 25, 26, 186.)

Davison's allegations about Facebook and School Board meetings are conclusory only, and he has and continues to have unrestrained opportunities to voice his opinions and/or criticism of the defendants. *Id.* His complaints that School Board members or employees, such as principal Stephens, will not engage him in discussions, fail to respond to his emails or demands for information, or publicize information he wants them to (Compl. ¶¶ 14, 18,23 d.), do not state a claim. *Steinburg,* 527 F.3d at 389 (citing, *Minn. State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 283 (1984), noting that there is "no constitutional right to force the government to listen to [one's] views").

Despite analysis in some law review articles about social media sites and to what extent such usage gives rise to First Amendment rights, the law is not sufficiently developed, much less clearly established, that Davison's First Amendment rights were implicated (or violated) by the vaguely described deletions of his Facebook postings from individual Board members' personal Facebook pages. Davison has failed to plead sufficient facts to allow the court to make a determination as to whether the Facebook accounts at issue were limited public forums, individual members' personal Facebook pages (and not public forums), or whether the deleted postings contained content protected by the First Amendment.

As for the no trespass letters, the record presented supports the principal's basis for banning Davison from the elementary school due to his "continued pattern of verbal abuse and threatening behavior toward school officials" and disruption of the "tranquility of the" school; Virginia Patterson's confirmation of that ban; the School Board committee's action--members

Turgeon, Fox and Keusters--upholding that ban at the November 23, 2015 meeting, now challenged in state court under § 22.1-87. (Exhs. 50-54). *Lovern,* 190 F.3d at 656.

To state a claim for violation of Equal Protection rights, Davison must plead sufficient facts to show that he was treated differently from "others with whom he was similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Kerr v. Marshall Univ. Bd. of Governors,* 2015 U.S. Dist. LEXIS 38206 *58 (S.D. W. Va. 2015)(quoting *Morrison v. Garraghty,* 239 F.3d, 648, 654 (4th Cir. 2001). Davison's Count 7 contains no facts identifying specific, similarly situated, individuals who were treated differently than he under the same or similar circumstances. "Simply stated, the Equal Protection Clause 'keeps governmental decision makers from treating differently people who are in all relevant respects alike." *Liggins v. Clarke County School Bd.,* 2010 U.S. Dist. LEXIS 97741. 33 (citations omitted). "Similarly situated," is defined in employment cases, as "employees must be similarly situated in all relevant aspects . . . 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Richardson v. Safeway, Inc.,* 2012 U.S. Dist. LEXIS 178848 *10-11 (E.D. Va. 2012)(citation omitted). Davison's conclusory statements are "far too amorphous to support an equal protection claim." *Dyer v. Maryland St. Bd. of Education,* 2016 U.S. Dist. LEXIS 66439 *44 (Md. 2016).   This claim should also be dismissed under the court's analysis in *Liggins* that public officials presiding over public meetings must exercise judgment and discretion which "forecloses a class-of-one claim arising from the type of discretionary decisions making" in this case. *Liggins,* at 37-38 (citing *Engquist v. Oregon Dep't of Agriculture,* 533 U.S. 591 (2008).

18

**D.   Davison has failed to state a claim or cause of action for municipal liability against the School Board under 42 U.S.C. § 1983**.

Based on the record presented, Davison fails to state a claim or cause of action to impose municipal liability on LCSB, and he cannot recover against the School Board under a theory of *respondeat superior*. *Monell v. New York City Dep't of Social Svs.*, 436 U.S. 658, 691 (1978). In order to set forth a claim against the School Board, there must be evidence of "an official policy or custom" that proximately caused the deprivation of" Davison's constitutional rights. *Randall v. Prince George County*, 302 F.3d 188, 203 (4th Cir. 2002); *Spell v. McDaniel*, 824 F.2d 1380, 1385-87 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988). The alleged unconstitutional act must be the result of implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the locality's policymaking officials. *Greensboro Prof. Firefighters Assoc. v. City of Greensboro,* 64 F.3d 962, 964 (4th Cir. 1995). Liability must be based on "a municipal act," as opposed to the act or actions of municipal employees; a locality may be liable only where a final decision by an employee "implements municipal policy." *Id.* at 965.

By law in Virginia, school boards have final policy making authority. Va. Const. art. VIII, § 7; *Liggins,* at *12. Individual school board members, "have no . . . duties except such as may be assigned to them by the School Board as a whole." *Liggins,* at * 13 (citing VA. CODE § 22.1-71). In this case, the undisputed facts show that the School Board had no policy or custom condoning violation of anyone's First or Fourteenth Amendment constitutional rights; in fact, the evidence is to the contrary. (Exhs. 1A through 1E). The allegations are insufficient as a matter of law to demonstrate "at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-

fact." *Spell,* 824 F.2d at 1388; *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (policy must give at least "tacit authorization" to unconstitutional employee conduct).

There are also no allegations of unconstitutional municipal policy or custom and the record taken as a whole cannot support a claim for municipal liability against the School Board. *Wright v. Fairfax County,* 2010 U.S. Dist. LEXIS 61788 * 13 ("In this Circuit the requirements for proof of municipal liability under § 1983 are stringent.")(citing *Jordan, ex rel. Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994)).  The School Board's policies on conduct of School Board meetings, including public participation,  (Exhs. 1C, 1D, 1E) are clearly constitutional; the produced videos from School Board meetings at which Davison spoke many times demonstrate his ability to effectively communicate to the School Board his position on multiple issues; and the process by which the no trespass letter was issued and upheld by the School Board at hearing on November 23, 2015 is consistent with the School Board's constitutionally delegated authority and recognized case law on the subject. *Lovern v. Edwards*, *supra; Collinson* 895 F.2d at 994, 998; *Steinburg,* 527 F.3d at 384-388 (commission hearing was a limited public forum where the hearing panel was "justified in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business . . ." including rejecting facial challenge to commission's policy prohibiting speakers from engaging in personal attacks, stating such a policy is not facially unconstitutional.)[3]

---

[3] April 15, 2016 Attorney General's opinion to the contrary, opining on the constitutionality of barring speakers from discussing personal issues or identifying individual school employees or officials during public session, was incorrectly decided in reliance on a case which was directly disavowed by the Fourth Circuit in *Steinburg, i.e., Bach v. Sch. Bd. City of Virginia Beach,* 139 F. Supp.2d 738, 743 (E.D. Va. 2001).

**E.     Davison's official capacity claims against all individual defendants should be dismissed with prejudice.**

Davison sues the individual defendants in both their individual and official capacities. (Compl. ¶ 1).  All of the defendants are sued based on their relationship as either School Board members (present or former) or School Board employees, acting within the course and scope of their employment at the time of the alleged actions complained of. (Compl. ¶¶ 3-8).  A lawsuit against an individual in his or her official capacity is an action against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 165-66 (quoting *Monell v. New York City Dep't.*, 436 U.S. 658, 690 n. 55 (1978)). Thus, the claims against the individual defendants in Counts 1 through 7 are unnecessarily redundant, as the true party of interest is the School Board.  *See Richardson v. City of Hampton*, Civil Action No. 4:95cv160, 1996 U.S. Dist. LEXIS 15437, *23-24 (E.D. Va. May 30, 1996) (Bradberry, J.).  Inasmuch as Davison has no stated claims against the School Board, any official capacity claims against the individual defendants should be dismissed with prejudice.

**F.     All of the individual defendants are entitled to qualified immunity and dismissal of Counts 1 through 7 on that basis.**

The Supreme Court has emphasized that "[b]cause qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)(quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).  Furthermore, "a driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government

officials [will] be resolved prior to discovery." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 n. 2 (1987)).   Qualified immunity should be addressed at the earliest possible stage of litigation and "may be raised in a motion to dismiss."  *Jenkins v. Medford,* 119 F.3d 1156, 1159 (4th Cir. 1997)(citing *Behrens v. Pelletier,* 516 U.S. 299, 306 (1996)).

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (internal quotation marks omitted).   Government officials are entitled to the defense of qualified immunity when sued in their individual capacities unless "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" *Id.*   The defense of qualified immunity is available to a defendant whose actions are found to be unconstitutional.  *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

If there is no violation of a constitutional right, then the defense of qualified immunity is not necessary or even implicated. *Id.* at 201. The test is one of objective reasonableness, meaning, "If officers of reasonable competence could disagree on [the] issue, immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The defense provides for protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* In the case of police officers, the question is whether the officer acted as an objectively reasonable police officer would have acted under similar circumstances.   Even an allegation of malice cannot defeat the defense of qualified immunity.  *Id.* at 341.

The relevant factual inquiry is whether reasonable School Board members and employees could believe that their conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The analysis also involves "a more particularized inquiry, focusing on whether a reasonable" School Board member or employee, at the time of the acts or actions complained of, "'could have believed'" their conduct was lawful, "in light of clearly established law and the information" and the information" they possessed at the time. *Cruey v. Huff,* 2010 U.S. Dist. LEXIS 118374 *20 (W.D. Va. Nov. 8, 2010); *Collinson,* 895 F.2d at 998 ("assessment whether a 'reasonable person' in the official's position would have known that his conduct would violate 'clearly established' rights must be made on the basis of information actually possessed at the time by the official.")

There is no evidence to support a knowing, intentional violation by any of the individual defendants of Davison's clearly established constitutional rights.  *Filarsky v. Delia,* 132 S. Ct. 1657, 1665-66 (2012)(court analyzed the public policy reasons for affording government workers, whether permanently or temporarily employed by the government, qualified immunity including "avoiding 'unwarranted timidity' on the part of those engaged in the public's business . . . and [e]nsuring that those who serve the government do so 'with the decisiveness and the judgment required by the public good' . . . ."). *Collinson,* 895 F.2d at 998 ("question of qualified immunity is not the question of whether a constitutional right has been violated . . ." but "whether a 'reasonable person' in the official's position could have failed to appreciate that his conduct would violate [someone's constitutional rights]").  As argued herein, Davison has not set forth a plausible claim for violation of his constitutional rights; as to Facebook allegations, the law is not clearly established that he was entitled to any constitutional protection or suffered any violation of his constitutional rights. *See infra* pages 18-19.  The claims against the individual defendants should be dismissed because they are entitled to qualified immunity.

**G. Defendant School Board members, Kuesters, Fox, Turgeon, Rose, Sheridan, Morse, Maloney, Dekenipp and Hornberger are entitled to Legislative Immunity for any claims arising out of their actions at School Board meetings and School Board committee meeting and action taken on November 23, 2015.**

Individual School Board members are entitled to "common law legislative immunity to the same extent as legislators protected under Constitutional legislative immunity provisions because '[t]he rationales for according absolute legislative immunity to federal, state and regional legislators apply [to local legislators] with equal force.'" *Bd. of Suprv. Fluvanna County v. Davenport & Co., LLC,* 285 Va. 580, 588 (2013)(citing *Bogan v. Scott-Harris,* 523 U.S. 44, 52 (1998). Common law immunity was "adopted to safeguard the performance of legislative duties from 'fear of outside interference.'" *Id.* (citing *Supreme Court of Va. v. Consumers Union of the U.S., Inc.,* 446 U.S. 719, 731-32 (1980). Legislative immunity is more than "protection against liability, . . . it prevent[s] legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves." *Id.* (citations omitted). "Common law legislative immunity applies to local legislators when they are 'acting [with]in the sphere of legitimate legislative activity . . ." which include, "but are not limited to, 'deliberating an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at Committee hearings.'" *Id.* at 589 (citing *Baker v. Mayor of Baltimore,* 894 F.2d 679, 681 (4th Cir. 1990) and *Fields v. Office of Johnson,* 459 F.3d 1, 10-11, 373 U.S. App. D.C. 32 (D.C. Cir. 2006)).

Judge Wilkinson's concurrence opinion in *Collinson v. Gott, supra,* sets forth a persuasive analysis of why School Board members Hornberger and Rose--against whom Davison alleges violation of First Amendment rights occurring at School Board meetings--and Turgeon, Fox and

Kuester--the School Board Committee Members who reviewed Stephens' trespass letters and upheld the ban at the November 23, 2015 meeting – and the remaining School Board members--for going along with or not rescinding the no trespass ban--all should be entitled to absolute immunity. *Collinson,* 895 F.2d at 1005-1011 (citing multiple cases including, *Tenney,* 341 U.S. at 377-78; *Mitchell,* 472 U.S. at 522; *Lake Country Estates, Inc., v. Tahoe Regional Planning Agency,* 440 U.S. 391, 406 (1979)).

In support of the rationale that legislators who preside over public meetings are entitled to legislative common law immunity, Judge Wilkinson noted that local legislators "inescapably" must exercise judgment and discretion, including maintaining order and decorum at such meetings, and they should not be fearful to act by threatened civil litigation. *Collinson,* 895 F.2d at 1006-7.   Quoting from *Tenney,* he noted that, "[i]n declining to impose civil liability upon legislators for what they did or said in legislative proceedings, the Supreme Court concluded that 'self-discipline and the voters must be the ultimate reliance for discouraging or correcting' abuses." *Id.* at 100.   *See also*, *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir. 1980) (county council members responsible for zoning ordinance afforded absolute immunity); *Healy v. Town of Pembroke Park,* 831 F.2d 989, 993-94 (11th Cir. 1987)(town commissioners who voted to contract out police services granted absolute immunity); *Reed v. Village of Shorewood,* 704 F.2d 943, 952-54 (7th Cir. 1983)(village board of trustees entitled to absolute immunity for reducing the number of liquor licenses).

This is consistent with the *Fluvanna County* decision which cited federal case law and identified a number of acts for which legislative immunity provides absolute protection from suit which would include school board meetings presided over by the chairman under published policies and procedures and parliamentary rules of order; and school board committee meetings

held pursuant to published policies and procedures for review and appeal of school administrators' actions. *Fluvanna County, 285* Va. at 586, 589.  Legislative immunity in Virginia is analyzed in reliance on both state and federal precedent.  Legislative immunity is absolute and cannot be negated by alleging that an official exercised their authority for an improper purpose:

> The claim of an unworthy purpose does not destroy the privilege.  Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good . . . . The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

*Tenney*, 341 U.S. at 377(citing *Fletcher v. Peck*, 6 Cranch 87, 130 (1810)).

### H.  Davison has failed to state a claim for violation of his Fourteenth Amendment substantive or procedural Due Process rights.

Based on the admissible record submitted in support of defendants' Motion, the facts alleged are insufficient as a matter of law to support a claim for violation of plaintiff's Fourteenth Amendment substantive or procedural Due Process rights.  According to the record of extensive proceedings in the state courts, Davison had both notice and numerous opportunities to be heard on his complaints. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("the central meaning of procedural due process has been clear: parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." (internal quotations omitted)). The administrative record submitted in support of the no trespass ban demonstrates compliance with procedural Due Process and Davison received all the process he was due under the law. Further, he has raised all of these same complaints in the pending suit filed pursuant to Virginia Code § 22-1-89 (Exhs. 50-54).

Davison also fails to allege facts that would give rise to a constitutional claim for violation of his substantive Due Process rights. The Due Process Clause of the Fourteenth Amendment

26

forbids states from depriving any person of life, liberty, or property without due process of law. However, the "standard of culpability for substantive due process purposes," has to exceed "both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Gedrich v. Fairfax County Dep't of Family Servs.*, 282 F. Supp.2d 439, 461 (E.D. Va. 2003) (*citing Miller v. City of Philadelphia*, 174 F. 3rd 368, 375-76 (3rd Cir. 1999)). *See also*, *Weller v. Dep't. Social Servs.*, 901 F.2d 387, 391-92 (4th Cir. 1990) (no substantive due process claim where conduct does not shock the conscience); *Wolf v. Fauquier County*, 555 F.3rd 311, 323 (4th Cir. 2009) ("Only abuse of power which 'shocks the conscience' creates a substantive due process violation.") (*citing*, *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)("[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"). Here, the pleaded facts and the admissible record do not even demonstrate any negligence on the part of the individual defendants. Davison has suffered no violation of his substantive Due Process rights.

I.    **Davison has failed to state a claim for defamation against defendants Rose, Stephens, Hornberger and Devlin, and each is entitled to sovereign immunity and the defense of privilege/qualified privilege, and Hornberger and Rose are entitled to legislative immunity.**

In a defamation case, the plaintiff must set forth the actual words used or said, and the statements must be considered in their entirety and in the context of the circumstances in which they were made. *Fuste v. Riverside Healthcare Assoc., Inc.*, 265 Va. 127, 134 (2003), ("good pleading in a defamation case requires the exact words spoken or written be set out in the declaration *in haec verba* . . . I[t] must purport to give the exact words.") (quoting *Fed. Land Bank of Baltimore v. Birchfield,* 173 Va. 200, 215 (1939)); *Cashion v. Smith*, 286 Va. 327, 341-42 (2013). The court performs an essential gate keeping function in defamation cases and may determine whether the allegations set forth a claim for defamation. *Webb v. Virginia-Pilot Media*

*Co.*, LLC, 287 Va. 84, 90 (2014)("ensuring that defamation suits proceed only upon statements which actually may defame a plaintiff rather than those which may merely inflame a jury to an award of damages, is an essential gatekeeping function of the court.")  The court's gate-keeping function includes determining as a matter of law whether any alleged defamatory statement is reasonably capable of the defamatory meaning ascribed to it. *Webb,* 287 Va. at 89. Relative statements that depend on a speaker's viewpoint are expressions of opinion, but those containing "provably false factual connotation" may be actionable. *Cashion*, 286 Va. at 336 (citing *Hyland v. Raytheon Tech serves. Co.* 277 Va. 40, 47 (2009)).  However, expressions of opinion other than "fighting words" are not actionable. *Am. Comm. Network Inc. v. Williams*, 264 Va. 336, 340 (2002).  Whether alleged defamatory statements are factual or opinion is a question of law for the court to decide. *Cashion*, 286 Va. at 336 (citations omitted).  Based on the allegations, none of the discribed statements are actionable. *Bouffault v. Schaecher*, 772 S.E. 2d 589 (Va. 2015).

The allegations in Count 8 do not set forth sufficient facts to identify statements in their entirety or in the context of the circumstances in which they were made for this court to perform a gate-keeping function. Also, based on the record before the court, statements for which only snippets have been provided were made by a defendant in the context of their official duties as either an employee or School Board member and qualified privilege attaches to those statements made during the course of investigation and decision to uphold the no trespass ban against Davison. Qualified privilege attaches to communications about which the individuals involved in communicating had a lawful duty or interest. *Larimore v. Blaylock*, 259 Va. 268, 572 (2000)("communications between persons on a subject in which the persons have an interest or duty are occasions of privilege.)

Legislative immunity attaches to any statements made by Hornberger and Rose and other School Board members during the course of School Board meetings and investigation into the no trespass ban against Davison. The power to investigate and report has long been held to be a necessary corollary of the power to legislate. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) ("[t]he power to investigate is inherent in the power to make laws because 'a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'")(citation omitted); *Doe v. McMillan*, 412 U.S. 306, 311-13 (1973) (recognizing that "authorizing an investigation pursuant to which [allegedly defamatory] materials were gathered, holding hearings where the materials were presented, preparing a report where they were reproduced, and authorizing the publication and distribution of that report were all integral parts of" the legislative process); *Fluvanna County*, 285 Va. at 589.

All four defendants are entitled to sovereign immunity. *Messina v. Burden,* 228 Va. 301, 309 (1984).  Under the four factor test in *Messina,* the defendants are entitled to immunity because they were engaged in the performance of governmental functions; the School Board, an immune entity under Virginia law, has significant interest in and involvement with matters of security and the education of students in Loudoun County; the School Board  exercises a degree of control over defendants Devlin and Stephens, and School Board members act pursuant to legislatively delegated authority, including School Board policies and procedures.  All four defendants are individuals who regularly exercise judgment and discretion in the performance of their governmental functions. *Messina,* 228 Va. at 309 ("critical factor" in determining employee's entitlement to immunity is whether they were "acting within or without his authority at the time of doing or failing to do the act complained of"); *Kellam v. Sch. Bd.,* 202 Va. 252,

257-58  (1960)(School Boards in Virginia perform governmental functions and are immune from suit in tort cases). School Board employees may only be held liable in tort for gross negligence or wilful and wanton conduct, neither of which is supported by the record or sufficiently pleaded. *Colby v. Boyden,* 241 Va. 125, 131-33 (1991).  The record supports neither gross negligence nor wilful, wanton or intentional conduct on the part of any defendant sufficient to defeat sovereign immunity. *Ferguson v. Ferguson,* 212 Va. 86, 92 (1971)(citing, *Haymore v. Brizendine,* 210 Va. 578 (1970)); *Koffman v. Garnett,* 265 Va. 12, 15 (2003).  For the same reasons, Davison has failed to state a claim for punitive damages. *Wright v. Everett,* 197 Va. 608, 614-15 (1956).

## III.        CONCLUSION

For all of the foregoing reasons, and for any additional reasons to be argued at hearing of this matter, defendants pray that this court grant their Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(1),(6), and 12(d), and dismiss all claims filed against them with prejudice.

**DEBRA ROSE, TRACY STEPHENS, ERIC HORNBERGER, JILL TURGEON, BRENDA, SHERIDAN, JEFFREY MORSE, WILLIAM FOX, KEVIN KUESTERS, JOY MALONEY, ERIC DEKENIPP, SUZANNE DEVLIN, and LOUDOUN COUNTY SCHOOL BOARD**

By Counsel

_____/s/_____
Julia B. Judkins, VSB No. 22597
Heather K. Bardot, VSB No. 37269
Catherine J. Carre, VSB No. 76581
BANCROFT, McGAVIN, HORVATH & JUDKINS
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:    (703) 385-1000
Facsimile:     (703) 385-1555
jjudkins@bmhjlaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June, 2016, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Michael A. Bragg, VSB No. 16797
Bragg Law
P.O. Box 1866
Abingdon, Virginia 24212
(276) 628-9160
bragglaw@bvu.net
*Counsel for Plaintiff*

_____/s/_____
Julia B. Judkins, VSB No. 22597
BANCROFT, McGAVIN, HORVATH
 & JUDKINS
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555
jjudkins@bmhjlaw.com
*Counsel for Defendants*

31