**UNITED STATES DISTRICT COURT**
**Eastern District of Virginia**
**Alexandria Division**

| | |
|---|---|
| **BRIAN C. DAVISON** | |
| **Plaintiff,** | |
| **v.** | **Case No.: 1:16-CV-540** |
| **DEBORAH ROSE, ET. AL.,** | |
| **Defendants.** | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S RESPONSE IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Brian C. Davison ("Davison"), by counsel, and respectfully submits this Memorandum of Points and Authorities in Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss.

## I.      BACKGROUND AND INTRODUCTION

Davison is a resident of Loudoun County, Virginia and the father of two children who attend Seldens Landing Elementary School, a public elementary school in the Loudoun County Public Schools ("LCPS"). (¶ 1)  Defendants are: (a) Loudoun County School Board (LCSB), the public governing body vested with the power and authority to administer public education in Loudoun County, Virginia; (b) the popularly elected members of the school board; (c) the former popularly elected members of the school board, and/or (d) the employees of the school board. (¶ 3-8).

Plaintiff's Complaint identified several actions including, but not limited to:

A.      Defendant LCSB maintains an official Facebook page for Loudoun County Public Schools (LCPS) where it disseminates information about the Loudoun schools and hosts a

comments section where any members of the public may post comments or pose questions. Notwithstanding the public nature of this forum, LCPS suppressed Davison's comments criticizing Loudoun schools' poor performance on an international standardized test. (¶ 30h)

B.     Defendants Rose, Hornberger, Turgeon, Sheridan, Morse, Fox, Kuesters, Maloney, and Dekenipp are, or were at times relevant to the events in the Complaint, publically elected members of the school board. Each member is paid a salary for his/her work on the school board and each member maintains an official Facebook which is, or was during times the defendant held public office, the primary means of relaying information and dialoguing with members of the public. Defendant Rose even publicly noted that board members gather input from "town halls and on Facebook, on my school board Facebook page".[1]  From the fall of 2015 and continuing to the present, each of these Defendants deleted Davison's comments from his/her official Facebook page and permanently blocked Davison from making any future comments. (¶ 30c-g)

C.     Davison has never been provided notice or a hearing regarding his exclusion from these official Facebook forums. (¶ 30i)

D.     Defendant LCSB tightened policy 2-29 which purports to vest the LCSB chairman with the authority to stop any individual speaker from criticizing a board member ("personal attack") during the public commentary session before each meeting. At various public meetings since, Defendants Hornberger or Rose attempted to stop Davison during the two minutes allotted to each speaker before school board meetings. At other times, Defendants Hornberger or Rose caused a de facto stop to Davison's comments by consuming substantial portions of Davison's two minutes with interruptions or rants about their personal dislike of Davison. (¶ 30k-30o)

E.     Defendant Rose requested a Loudoun County Sheriff Office deputy forcibly

---

[1] Rose's public comments at Feb 26, 2013 LCSB meeting - time mark 1:58:24.

remove Plaintiff for his comments made at a March 2016 public hearing on school zoning. (¶ 174)

F.      After Hornberger relayed defamatory remarks about the Plaintiff to LCPS officials, Defendant Devlin utilized the resources afforded her by nature of her employment with LCPS to conduct an investigation of Davison for nine (9) months but failed to identify cause to be concerned that Davison would pose any risk to the safety or student instruction. (¶ 33a-33o, 75-85)

G.      Notwithstanding the clear absence of cause, Defendant Stephens sent Davison a letter in September of 2015, approximately one week after Davison criticized Defendant Stephens during a PTA meeting for enacting a SOL re-test policy that identified students who performed poorly on the SOL test and subjected these students to peer ridicule. Defendant Stephens' letter advised Davison he would be prosecuted for trespass if he attempted to enter Seldens Landing's premises. (¶ 30.u-30.aa)

H.      Defendants Fox, Kuesters, and Turgeon upheld the no-trespass letter during an LCSB committee review.  All Defendants were aware of and took no action to end the ban for nine (9) months despite having substantial evidence that Davison posed no danger to safety or student instruction. (¶ 33-38)

I.      Beyond causing Davison and his family substantial hardship, the Defendants' no-trespass letter prevented Davison from all contact (even by phone or electronic mail) with his children's teachers and excluded Davison from all public meetings held at Seldens Landing, including events held afterhours when no students or teachers are present. (¶ 30-33)

J.      On information and belief, Defendant Stephens reported Davison to child protective services for such incidents like Davison's 9-year old daughter being upset one day that she couldn't play kick-ball because she "was sent to school in rain boots." (¶ 30.s-30.t)

K.      Defendant Rose filed a false criminal complaint alleging Davison had threatened her children. Even though her false complaint was dismissed, Defendant Rose contacted Davison's

employer and Davison's elderly parents making the same false allegations. (¶ 30.o-30.r)

## II.      ARGUMENT

A Court may dismiss a complaint if the Plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rather, a complaint need only give a short and plain statement of the claim so as to give the defendants fair notice of the nature of the claim and the grounds upon which the claims rest. *See, e.g., Ericson v. Pardus*, 127 S.Ct. 2197,2200 (2007); *In re Mills*, 287 F. App'x. 273 (4th Cir. 2008). A court should assume the veracity of the facts within the complaint when considering the plausibility that might "give rise to an entitled relief" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)  and "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendants have submitted numerous exhibits in connection with their memorandum and contend that the Court may consider those records in analyzing their 12(b)(1) motion.  Plaintiff

objects to the consideration of the extra-pleading materials in consideration of the 12(b)9b)(1) motion.

## A.

## THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR DISMISSAL AS THE CITED *ROOKER-FELDMAN* AND *YOUNGER* ABSTENTION DOCTRINES ARE ENTIRELY INAPPLICABLE.

The *Rooker-Feldman* doctrine provides that a party may not petition a federal court to set-aside a dissatisfactory state court judgment unless such relief is specifically authorized by Congress.  In *Skinner v Switzer*, 562 U.S. 521, 532 (2011), the Supreme Court unambiguously stated that Rooker-Feldman "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments." The doctrine does not impede a federal court from exercising federal jurisdiction over a "same or a related question." Id. at 532. Nor does it bar federal proceeding because there is a pending state court proceeding.  *Exxon Mobil Corp. v Saudi Basic Industries Corp.,* 544 U.S. 280, 283-84, 291 (2005).

Similarly, the Supreme Court has held that the *Younger* abstention doctrine is narrowly construed and federal jurisdiction should only be denied in three types of cases: (1) cases involving ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of state courts' ability to perform judicial functions. S*print Communs. Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013)*.

Here, the Defendants have attached voluminous records to their motion on the suggestion that these documents are integral to Plaintiff's Complaint. However, all of the pleadings Defendants attach relate to cases unrelated to the claims presented in the Complaint. Further, the Plaintiff does not request this Court review of any state court decisions or re-adjudicate any matter

previously decide by a state case. None of Plaintiff's claims fall within a category identified in *Younger* abstention doctrine.

For these reasons, the Plaintiff respectfully requests this Court find the doctrines cited by Defendants entirely inapplicable and deny the Defendants' motion to dismiss.

## B.

## THE COMPLAINT ALLEGES SUBSTANTIAL VIOLATIONS
## OF CONSTITUTIONAL RIGHTS

The Defendants argue that the Complaint fails to set out "substantial" federal claims necessary to invoke the jurisdiction of this court, contending that the constitutional claims raised in the Complaint are "wholly frivolous" claims made as a pretext to bring state law claims into the federal forum.  That argument demonstrates the source of this controversy and the necessity of the federal forum: the Defendants fail to acknowledge the limits by which the Bill of Rights constrains the exercise of their official authority.  The sundry violations of those rights are well-pled.

First, it should be noted that while Defendants have raised a 12(b)(1) argument, they have not made a <u>factual</u> controversion of the claims made which would support federal jurisdiction; viz., it appears that their argument is that, assuming the facts alleged in the Complaint as true, any constitutional violation is, in their view, de minimis.  Defendants have submitted state court records, but those do not controvert the factual allegation which form the bases of Plaintiff's constitutional claims.  They have submitted recordings of the Board meetings which Plaintiff believes supports his claims but which, even so, must be considered in the context of the entire history of the parties' interactions.

"A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."  *Hagans v. Lavine*, 415 U.S. 528, 538 (1973).

The First Amendment protects the right to engage in political speech and prohibits state government actors from abridging free speech.. *Gitlow v New York*, 268 U.S. 652 (1925). Political speech is at the core of that protected by the First Amendment. *New York Times, Co v Sullivan*, 376 U.S. 254 (1964).  The Complaint raises defendant's unconstitutional direct violations of that right through the censorship of Plaintiff's "public comment" made at proper time and in proper manner at public meetings of the School Board and at such times during meetings of the PTA.

## C.

**THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR DISMISSAL AS DAVISON'S COMPLAINT PLEADS FACTS SUFFICIENT THAT, WHEN ASSUMED TO BE TRUE, ENTITLE DAVISON TO THE RELIEF REQUESTED**

> **COUNT I: This Court should deny the Defendants' motion because the Defendants engaged in unconstitutional viewpoint and content restrictions when it suppressed Davison's comments in limited public forums.**

> *Suppressed comments on the official LCPS Facebook page.*The Defendants request this Court dismiss Plaintiff's complaint on the allegation that Plaintiff's statement "fails to plead sufficient facts to allow the court to make a determination whether the Facebook accounts at issue were limited public forums." Def. Mot. Dismiss p.17. The Defendants conclude "the law is not sufficiently developed" to establish that Defendants implicated Plaintiff's rights by deleting his comments from the official Facebook page.

Plaintiff need only give a short and plain statement of the claim to give the defendants fair notice of the nature of the claim and the grounds upon which the claims rest. *See, e.g., Ericson v. Pardus*, 127 S.Ct. 2197,2200 (2007); *In re Mills*, 287 F. App'x. 273 (4th Cir. 2008). Here, the Defendants readily understood from the mere reading of the Complaint that the school board maintains an official Facebook page wherein it hosts a public comments section. Further, the Defendants understood Plaintiff claims this Facebook page is a limited public forum protected by the First Amendment and that Defendants violated Plaintiff's constitutional rights by suppressing his comments on the school district's official Facebook page. From the Defendants' statements within its motion, it is clear Plaintiff's complaint is adequately plead as it enables the Defendants to understand the nature of his claim and the grounds upon which his claims rest.

*Facebook as Public Forum.* Defendant suggests that this Court should dismiss Plaintiff's complaint because few cases have had the opportunity to specifically examine Facebook as a public forum. Aside from the peculiarity of this suggestion, this Court should deny Defendant's motion because clear law prohibits content and viewpoint suppression of speech.  It is well established that the Constitution limits a government's ability to regulate places it has opened for expressive activity. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S. Ct. 948 (1983).  In *Rosenberger v. University of Virginia*, 515 U.S. 819 (1995), the university voluntarily funded student publications but denied funding to a religious publication. The United States Supreme Court held that the university's funding created a limited public forum and it could not control the content and perspective. Id. at 825.

Although use of Facebook is comparatively new, governments have utilized Facebook pages as the modern equivalent of the quintessential public square: officials post information and provide the public a forum for discussion. There is no reason to believe courts will view these

discussions on Facebook differently than other public discussion.

In fact, the Eastern District of Virginia recently denied a government defendant's motion to dismiss a complaint that alleged the public official violated constitutional rights when it deleted comments from the county's Facebook page. *Davison v. Plowman*, No. 1:16-cv-0180, 2016 U.S. Dist. LEXIS 74409 (E.D. Va. June 6, 2016).  Similarly, in *Hawaii Def. Found. v City & County of Honolulu*, 2014 U.S. Dist. LEXIS 84266 (2014), the court ordered Honolulu Police Department to pay the plaintiff's attorney's fees after Honolulu Police Department deleted Plaintiff's comments from the department's Facebook page and blocked plaintiff from making future postings.

Here, Defendant Loudoun Public Schools' Facebook page, like *Rosenberger*, is a government created limited public forum that implicates Plaintiff's constitutional rights. As such, the school board may only enact time, place, and manner restrictions that "serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of the information." *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 648 (1981).

Despite this clear law, Defendant LCSB maintains it has a right to delete comments and prevent further posting after the third office. Further, the school board suppressed Plaintiff's critical comment on the official Facebook page.  Thus, because Plaintiff's complaint asserts that the school board suppressed his comments in a limited public forum, such suppression was due to the viewpoint of Plaintiff's comments, and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury," *Elrod v Burns,* 427 U.S. 347 (1976).

    *Suppressed comments and ban on the official LCSB members' Facebook pages.*  Rose, Hornberger, Turgeon, Morse, Fox, Kuesters, Maloney, and Dekenipp are, or were at times during the events embracing Davison's complaint, paid, elected members of the school board. Each

elected to use an official Facebook as his/her primary means of providing school board information and dialoguing with members of the public. These official Facebook pages differ from private Facebook pages because they are designated "public figure" within Facebook and treated differently. Each Defendant used his/her public figure Facebook pages exclusively to discuss school board business and dialogue with the public. From the fall of 2015 and continuing to the present, each of these Defendants deleted Plaintiff's comments from his/her official Facebook page and/or permanently blocked Davison from making any comments of the official Facebook pages.

The Defendants' motion suggests that they did not implicate Plaintiff's constitutional rights because the Plaintiff had other avenues of speech such as his own Facebook page. This argument is the equivalent of stating that a government official has the unqualified authority to restrict speech in a public square because a speaker may say anything he wishes in his own back yard. Such a view clearly contradicts existing law.

The Defendants' official Facebook pages are publically accessible places where official information is posted and members of the public discuss issues of concern. As such, these official Facebook Pages constitute limited public forums subject only to time, place, and manner restrictions when such restrictions "serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of the information." *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 648 (1981).  In determining if "ample alternative channels" exists, courts have ruled that proximity to the debate is a requirement for alternative channels of communication. *Cyr v Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 549-550 (2014). Further, an indefinite ban is equivalent to a permanent injunction against speech which can only be satisfied by a compelling government interest and due process of law. Id. at 548-49.  Here, the Defendants selectively deleted

Davison's critical comments and/or permanently banned Davison from all future participation without due process and without attempting to establish a justifiable basis for this ban

_Restrictions during the public comment period of LCSB meetings._  It is well established that the Constitution limits a government's ability to regulate places it has opened for expressive activity. _Perry Educ. Ass'n v. Perry Local Educators' Ass'n_, 460 U.S. 37, 103 S. Ct. 948 (1983). Here, any resident of Loudoun County may sign up to speak to the school board before the school board's general public meetings. Davison regularly signs up to speak and is allotted two minutes to address any topic on education, but was warned in 2015 that LCSB had enacted By-Law 2-29 which precluded all "personal attacks." Davison has challenged this by-law on many occasions. On two such occasions, Defendant Hornberger shut down Davison during stating Davison's comments were unrelated to the subject matter of the LCSB meeting. On other occasions, Defendants Hornberger or Rose caused a de facto stop to Davison's comments by consuming substantially all of Davison's allotted two minutes with their own interruptions or rants.

The Defendants' motion argues that prohibitions on personal attacks are valid., relying on _Steinburg v Chesterfield County Planning Comm'n., 527 F.3d 377 (4th Cir. 2008)._  The Defendants' reading clearly contradicts the holding in _Steinburg._ In _Steinburg_, the Fourth Circuit Court held that personal attacks on government officials _**is**_ constitutionally protected speech when the attacks pertain to the government official's public duties. The Virginia's Attorney General issued a recent advisory opinion advising Virginia's county governments that bylaws prohibiting "personal attacks" were too broad and could not be enforced.

As Davison had a constitutional right to speak in the limited public forum, the Defendants impermissibly restricted his speech based on viewpoint, and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury," _Elrod v Burns,_ 427 U.S. 347 (1976).  Davison has stated a cause of action under 28 USC 1331 and the

11

Defendant's motion should be denied.

**COUNT II: This Court should deny the Defendant's motion because the Defendant banned Davison for retaliatory purposes.**

In *Cole v Buchanan,* the court held:

"a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right, even if the act of the official, absent the retaliatory motive, would otherwise have been proper…is clearly established that the First Amendment prohibits and [official] from retaliating against an individual for speaking critically of the government." *Cole v Buchanan County School Board,* 2007 U.S. Dist. LEXIS 94790 (2007) citing *Trulock v Freeh*, 275 F.3d 391, 406 (4th Cir. 2001) and *Blankenship v Manchin*, 471 F.3d 523, 533 (4th Cir. 2006).

Such retaliatory actions instill fear and chill the freedom of speech. Here, the Defendants undertook a series of actions against Davison, such as: Defendant Devlin conducted an extensive investigation of Davison including having him followed during meetings based on slanderous comments by Hornberger; Defendant Rose filed a frivolous criminal complaint against Davison; Defendant Rose contacted Davison's employer and parents; Defendant Stephens demanded of deputies "I WANT HIM ARRESTED" when Davison waited outside school grounds to retrieve his children after school hours and reported Davison to child protective services for actions like Davison's daughter being upset that she couldn't play kick ball because Davison had let her wear rain boots to school.

Defendants LCSB, Stephens, Devlin, Kuesters, Fox, and Turgeon issued a no-trespass letter against Davison that prevented Davison from attending all events held at his children's school, participating in parent-teacher conferences, speaking to his children's teachers even by phone or email, picking up his children, taking lunch to his daughter when she forgot it at home, attending his children's school performances and events, participating in PTA meetings,  and school activities; (¶ 23, 24, 30) and all LCSB members, including Maloney and DeKenipp, were

12

aware of the no-trespass order but refused requests by school board member Tom Marshall to revisit the ban.

The school board's own investigation and the information Davison willingly provided the Defendants clearly indicated that he posed no safety risk nor were there any credible allegations that he had ever interrupted school events. The Defendants' actions and comments suggest they had no fear of Davison. (¶30d, 30j, 172-175) and clearly indicate that such actions were for no other purpose than to retaliate against Davison for making critical comments.

The Defendant undertook these actions despite actual knowledge of the court's holding in *Cole v. Buchanan County School Bd* where the Fourth Circuit acknowledged that retaliation for free speech is unlawful, *Cole v Buchanan County School Bd*, 328 Fed. Appx. 204 (4th Cir. 2009) (unpublished) showing a wanton disregard for the law and constitutional rights.

**COUNT III: This Court should deny Defendants' motion to dismiss because the Defendants denied Davison his constitutional right to engage in the education of his children.**

A few days after issuing the no-trespass letter, Defendant Stephens refused Davison permission to attend a pre-scheduled parent-teacher conference. When Davison's ex-wife attempted to call Davison during the meeting to allow him to participate by telephone, Defendant Stephens prevented her from making the call. In the following months, Defendants Stephens prevented Davison from any engagement with his children's teachers. Davison was not allowed to meet his children's teachers at a different location, he was not allowed to communicate with the teachers by telephone, and his emails to the teachers were redirected. Defendant Stephens' actions were undertaken with full knowledge and/or participation of the Defendant school board and each school board member.

The fundamental liberty interest of parents to "control the education" and to "engage [teachers]" regarding instruction of their children was first defined.in *Meyer v Nebraska*. 262

U.S. 390, 400 (1923). Two years later, the Supreme Court expanded on that interest in *Pierce v Society of Sisters,* 268 U.S. 510, 534-535 (1925) by holding parents have the right to choose public or private schools for their children.  In *Troxel v Granville*, 530 U.S. 57, 78-79 (2000)., the Supreme Court reaffirmed its prior holdings in *Meyer* and *Pierce* that parents have a fundamental liberty interest "to direct the upbringing and education of children."

The Pierce decision only dealt with a limited portion of the Fourteenth Amendment liberty interest in controlling a child's education.  The suit was brought by private schools, not a parent.  The private schools asserted their right to educate children by enforcing a parent's right to choose the school.  The expansion of a parent's fundamental liberty right to choose public or private schooling in Pierce does not limit the fundamental right to "engage" with a child's teacher as defined in Meyer.  In fact, Meyer only concerned parents' rights to engage teachers in public school.  The right to directly engage with children's actual teachers is settled law.  For over four months, Defendants blocked Plaintiff's attempts to engage with his children's teachers.

In order for parents to exercise the fundamental right to direct their children's education, a parent must have sufficient, meaningful contact with the children's teachers to allow parents to make informed decisions in controlling their children's education. If schools were to decide no parent should ever be allowed (1) on school grounds either for parent teacher conferences or for student events, (2) to communicate directly with a child's teacher, or (3) to attend PTA meetings in which educational practices are discussed, could a school reasonably claim it allowed parents to gather sufficient information to make an informed decision regarding the education of their children?  Schools, of course, retain the ability to control time, place, and manner of engagement, but schools may not bar all contact between the parent and teachers.

Here, Davison's Complaint asserts his fundamental liberty interest in directing the education of his children, including his right to engage their teachers.  The Complaint also

asserts that the Defendants denied him this right when they prevented him from attending parent teacher conferences to understand his children's progress, attending PTA meetings to understand the direction of the school, and engaging with his children's teacher for several months.

Because the Defendants' actions implicate Davison's fundamental liberty interests, Davison has asserted a cause of action under the 1st and 14th Amendments, this court has jurisdiction under 28 USC 1331, and the Defendant's motion should be denied.

**COUNT IV: This Court should deny Defendants' motion to dismiss because the Defendants engaged in unconstitutional viewpoint and content restrictions when they denied Davison from participating in PTA meetings because Davison criticized the Defendants.**

Seldens Landing has a Parent Teacher Association ("PTA"). According to the PTA bylaws, the principal of the school is designated as a member of the PTA board that runs and represents the PTA. Defendant Stephens sits on Seldens Landing's PTA board as the principal of Seldens Landing, and described the PTA as an "extension of the school." (¶ 22)

Plaintiff is a member of Seldens Landing's PTA who regularly attended meetings prior to the no-trespass letter. These PTA meetings are normally conducted at Seldens Landing and Defendant Stephens holds a Q&A session at each meeting where any participant may raise questions of concern.

The school had time, place, and manner restrictions for PTA meetings and Davison abided by these restrictions each time he attended PTA meetings. He entered the school at the time specified for the PTA meeting, proceeded directly to the cafeteria where the meetings are held, spoke when called on by Defendant Stephens, and left when the event was over. He had never been asked to leave any of the numerous events he attended and Sheriff's Deputy Rodriguez, the school's resource officer who was in attendance at many of the same events, never found cause to confront Davison or to write any incident reports.

15

On September 22, 2015, Davison raised his concerns during a Q&A session about Seldens Landing's SOL retake policy. Davison advised Defendant Stephens that the school's practice had singled out students who failed the test and exposed them to peer ridicule. Defendant Stephens refused to address Davison's concerns and informed him that she would ban him if he continued to ask such questions.

Following a closed meeting of the Loudoun School Board that same day, Defendant Stephens served a no-trespass letter on Davison one week later. This letter informed Davison that he would no longer be allowed on school grounds without first requesting and obtaining Defendant Stephen's permission. It categorically banned him from all future PTA meetings. Plaintiff requested and was denied permission to attend PTA meetings held at Seldens Landing, including meetings held during times when the school was otherwise closed and no teachers or students would be present. Davison also requested the PTA meetings be held at a different location, but the PTA Board, with Defendant Stephens' participation, denied his request.

Defendants Fox, Kuesters, and Turgeon were appointed to a LCSB select committee to conduct an administrative review of the ban. The select committee upheld the ban and reported its actions to the full LCSB who took no further action to lessen or overturn the ban.

In *Rosenberger v. University of Virginia*, the Supreme Court held that when a government entity voluntarily opens a venue for speech, it has created a limited public forum and could not control the content and perspective. *Rosenberger* at 825. "Moreover, any "prior restraints on speech . . . are the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976).

Defendants voluntarily opened Seldens Landing to all members of the public who wish to attend the PTA meeting. Having done so, the Defendants created a limited public forum where only time, place, and manner restrictions are permitted if such restrictions "serve a significant

governmental interest, and that in doing so they leave open ample alternative channels for communication of the information." *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 648 (1981). In *Lamb's Chapel v Ctr. Moriches Union Free School Dist.*, 508 U.S. 384, 392-93 (1993), the Supreme Court reaffirmed that access to even nonpublic forums must be viewpoint neutral.

The Defendants enacted such time, place, and manner restrictions for the safety of the school and Davison abided by the restrictions. Notwithstanding Davison's compliance with these restrictions and clear evidence that he did not pose any risk to the safety and operation of the school, Defendants refused to admit Davison into the limited public forum. Further, Defendant Stephens insisted the PTA meetings continue to be held at the school thereby exercising a prior restraint on Davison's freedom of speech in a limited public forum.

Because the Defendants created a limited public forum and then engaged in viewpoint discrimination when excluding Plaintiff from speaking, such discrimination constitutes prior restraint on speech and Plaintiff has asserted a valid claim under 28 USC 1331. For these reasons, this Court should deny the Defendant's motion to dismiss.

**COUNT V: Defendants violated Davison's constitutional right to peaceable assembly by excluding Davison from participating in public events because of Davison's criticism of the Defendants.**

Seldens Landing hosts several events where it invites parents, students, and other members of the public to attend. Prior to the no-trespass letter, Davison attended many of these events with his children. Davison always abided by the time, place, and manner restrictions; has never interrupted an event; and has never been asked to leave. After the no-trespass letter, Davison continued to attend events with his children that were held at other Loudoun County schools, ice skating rinks, and parks. Again, Davison always abided by the time, place, and manner restrictions, never interrupted the event, and has never been asked to leave.

During the time embracing Plaintiff's complaint, Seldens Landing hosted back to school nights, chorus concerts, Veterans Day celebrations, field days, science fairs, patriotic plays, spooky bingo, and other events Plaintiff and/or his children wished to attend. Without further explanation, the school denied every one of Davison's requests to attend such events.

The Defendants suggest that it could exclude Davison from these events because the events did not provide a venue for public commentary. They cite the Fourth Circuit Court in *Lovern v Edwards,* 190 F.3d 648, 651, 655 (1999), to support their belief that schools may exclude parents at will.

In fact, the Fourth Circuit Court in *Lovern* merely states in dicta that it is conceivable the court would allow a school to limit a non-custodial parent's access to school when the: (a) custodial parent specifically requested the school provide her notice and the opportunity to participate in all discussions regarding her children, (b) non-custodial parent continuously entered school property in clear violation of school policy and interrupted student instruction during his visit, (c) non-custodial parent berated school staff in person during his visits and by telephone at staff's homes, and (d) parent has other avenues to engage his children's teachers.

Absent legal authority on the specific questions of a parent's ability to attend events, the correct inquiry is to consider the general law on limitations on constitutionally protected rights. The Supreme Court has held that the "right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v State of Oregon,* 299 U.S. 353, 364 (1937). As in free speech, governments open limited public forums for assembly when they voluntarily provide a venue for such activity. In *Rosenberger v. University of Virginia*, the Supreme Court held that when a government entity voluntarily opens a venue, it creates a limited public forum and could not control the content and perspective. *Rosenberger* at 825. Although the 4th Circuit never reached the issue of when a school may validly exclude a parent in *Lovern*, the

dicta suggested that the court would validate the school's exclusion when the parent enters the schools at times when the school is not open to the public; violates the time, place, and manner restrictions when he has been invited onto the school; and disrupts events and instruction while on campus.

Assembly and speech are not just limited to traditional public forums such as sidewalks. Citizens may choose to "*assemble*" and "*speak*" by attending student events held on school grounds that are open to the public while wearing politically expressive clothing. Plaintiff asserts an individual's mere presence at an event, particularly for political figures, can jointly constitute speech and assembly under current Supreme Court cases. *See Tinker v Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509 (1981 )Absent a clear threat of disruption, any restrictions on attendance must be viewpoint neutral. *Id. at* 508-510.

Beyond expressive speech, the First Amendment protects the right to peaceably assemble. When a school opens its facilities and invites the public to attend, even for nonpublic forums, it may impose time, place, and manner restrictions for participation, but it may not exclude individuals based on views or perspective. *Lamb's Chapel v Ctr. Moriches Union Free School Dist.,* 508 U.S. 384, 392-93 (1993). Defendants' opening of Seldens Landing grounds for performances, student events, or meetings, constituted a limited public forum. They could restrict time, place, and manner of participation, but once Davison complied with the Defendants' requirements, Defendants could not impose additional Davison-specific restrictions.

### COUNT VI: Defendants denied Davison his constitutional rights and privileges without due process of law.

The court has held that meaningful, prior due process is required before fundamental liberty interests are restricted. *Johnson v Perry,* 2015 U.S. Dist. LEXIS 142885 (2015) citing

*Mathews v Eldridge*, 424 U.S. 319, 333 (1976) and *Cleveland Bd. Of Education v Loudermill*, 470 U.S. 532, 542 (1985)

LCSB never provided Davison notice and a chance to be heard prior to issuing the no-trespass ban.  Given Dr. Patterson informed Davison she merely complied with the wishes of LCSB in her intermediate review, Davison's due process could not have been meaningful. (¶ 32) LCSB never afforded Davison any due process notice, hearing or appeal for censoring his comments on its district's or individual board members' official Facebook pages.  LCSB never provided Davison any due process notice, hearing or appeal after LCSB moderators shut down Davison's public comments at board meetings despite Davison's repeated pleas.  (¶ 30i)

Davison asserts a valid Fourteenth Amendment due process claim, this Court has jurisdiction pursuant to 28 USC 1331, and this Court should deny Defendants' motion to dismiss.

**COUNT VII: This Court should deny the Defendants' motion as the Defendants treated Davison differently than other similarly situated residents, parents, and PTA members without a rational basis and thereby denied Davison equal protection of the law.**

The Equal Protection Clause of the Fourteenth Amendment requires government to have a rational basis for treating similarly situated individual's differently.  *Willowbrook v Olech,* 528 U.S. 562, 564-65 (2000).  Here, Davison is a resident of Loudoun County, a parent of two children attending public school, and a member of the PTA.  He interacted with the Defendants in all three of these capacities and in each capacity the Defendants treated Davison differently than other similarly situated individuals.

The Motion To Dismiss on this Count is based on the argument that the Complaint does not identify others who are treated differently.  That argument fails.  Paragraph 147 alleges that Plaintiff is treated differently than (a) residents of Loudoun County, (b) parents of children of Selden's Landing, and (c) other members of the PTA.  .

This "Davison Exclusion" from Seldens' Landing is not rationally related to the Defendants' claimed interest of school safety. Notwithstanding the Defendants' actual knowledge that Davison poses no risk to safety or student instruction, the Defendants have denied Davison access to school premises at all times, including times when school is not in session. As a result of this ban, Davison has not been able to take his children to Seldens Landing during the weekend as other parents. Further, the Defendants have specifically denied him permission to attend PTA meetings that occur after school hours. As no students are present these times, the Defendants actions do not promote safety.

Conversely, during the time of the Defendants' no-trespass letter was in effect, Davison attended several PTA or Seldens-sponsored events at ice skating rinks, ball parks and other schools. Davison was allowed to visit the grounds of every other LCPS school as he even participated in the Veterans Day celebrations at three other schools.  At each event, Davison interacted with students, parents, and staff without incident, a fact acknowledged by both Stephens and Patterson. Because the Defendants' no-trespass letter neither prevented Davison from interacting with students nor limited his exclusion to such times when students were present, the Defendants' no-trespass letter was not rationally related to any fear for school safety.

Defendants even admit Davison was so disciplined at public LCSB meetings that he was never "removed, ejected, or escorted from any School Board meetings".  It simply is not plausible for Defendants to consider Davison a threat given these facts. Def. Mot. Dismiss p.16

Accordingly, Davison has asserted a claim under the Equal Protection Clause, this court has jurisdiction under 28 USC 1331, and the Defendants' motion should be denied.

A. **This Court should deny Defendant's motion for dismissal because the Defendants are not entitled to immunity.**

The Defendants have the burden to prove their actions fall within the scope of the asserted

immunity. *Huminski v Corsones* at 80.

The School Board contends that the Complaint does not state any basis for municipal liability.  As the Defendants argue, liability may be established by demonstrating a "decision officially adopted and promulgated by" the municipality.

Although the letters prohibiting Plaintiff from coming on school property were issued by Principal Stephens, they were the act of the School Board.  First, as described by the Defendants in their memorandum, it is the School Board and not the Principal who has authority and control over school property.  Thus, as stated in the letters, Stephens acted on behalf of the Board.  That liability would lie in agency, not respondeat superior.

Secondly, Stephen's acts banning Plaintiff from coming on school property were reviewed by a committee of the Board as part of the administrative review process.  The Committee, acting as the Board, approved and authorized the action.  Similarly, only the Board could act to limit Plaintiff's participation on the LCSB "Official" Facebook Page and the Chairman's actions in censoring Plaintiff's speech made at Board meetings was the act of the Board as a whole.

A party may recover against a municipality when there is evidence of a policy statement, ordinance, regulation, or decision by those who represent official policy. *Monell v Dept of Social Services*, 436 U.S. 658, 690-91 (1978).  In *Spell v McDaniel*, 824 F. 2d 1380 (1987) (citing *Bennett v Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). the court found both the municipality and individual officials liable because the mere knowledge and acquiescence to an unconstitutional act by the municipal policymakers allows for custom to "fairly be attributed to the municipality as its own." Id. at 1387.  Actions taken by a governing body at a meeting may be assumed to be the policy of that body particularly if the "individual defendants are members of the boards of policy making branches of the County". *Kuchka v Kile*, 634 F.Supp. 502, 507 (1985).

Here, Loudoun County School Board acts through its governing body and its governing body is comprised of the school board members.  The school board members possessed actual knowledge of all events asserted in Davison's complaint including Defendants: preventing Davison's participation in public Facebook discussions, truncating Davison's speaking at public meetings, banning Davison from Seldens Landing for no articulable reason, preventing Davison from participation in his children's education, and maligning Davison in false complaints and public comments. Further, the school board members participated in, upheld or acquiesced to all actions such that all actions are the official policy of LCSB. Having sanctioned such action as the official policy of the Loudoun County Public Schools, LCSB cannot now assert municipal immunity when its official policies violated constitutional rights.

1.    *Defendants' may be liable in official and personal capacities.*

Defendants' motion suggests that individual defendants cannot be named in their individual and official capacity within the same suit.  Such an argument is entirely baseless and in direct contravention of established law that: (a) both plaintiffs and defendants may obtain the accountability or vindication they seek and (b) named parties may fully participate in litigating their defense.  No substantial burdens were found.  *Chase v City of Portsmouth*, 428 F.Supp. 2d 487, 490 (E.D. Va. 2006).

2.    *Defendants' are not protected by qualified immunity.*

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cnty.,Md.*, 713 F.3d 723, 731 (4th Cir. 2013). Where a plaintiff "(1) allege[s] a violation of a right (2) that is clearly established at the time of the violation," a motion to dismiss on qualified immunity grounds must

be denied. *Evans v. Chalmers*, 703F.3d 636, 646 (4th Cir. 2012)' *Trulock v Freeh*, *Trulock v Freeh*, 275 F.3d 391, 406 (4th Cir. 2001

Davison previously has set out the legal and factual bases for his constitutional claims.  It is well established that this due process clause prohibits government agencies, government employees, and elected officials from (a) enacting content and/or view point based regulations on speech, *Rosenberger v Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995) (b) interfering in a parent's fundamental right to engage in the education of his children, *Troxel v Granville,* 530 U.S. 57, 78-79 (2000);  (c) denying a parent the privilege of assembly because of unpopular viewpoint, *Johnson v. Perry*, 2015 U.S. Dist. LEXIS 142885; or (d) depriving a parent from fundamental interest without at least notice and a prior opportunity to be heard. *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Fourteenth Amendment further prohibits agencies, their employees, or elected officials from treating individuals "differently from others similarly situated . . . [without] rational basis for the difference in treatment."  *Willowbrook v Olech,* 528 U.S. 562, 564-65 (2000). It is also well established that:  "a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right, even if the act of the official, absent the retaliatory motive, would otherwise have been proper…"  *Cole v Buchanan County School Board,* 2007 U.S. Dist. LEXIS 94790 (2007) citing *Trulock v Freeh*, 275 F.3d 391, 406 (4th Cir. 2001) and *Blankenship v Manchin*, 471 F.3d 523, 533 (4th Cir. 2006).

On that basis, the Court should overrule the qualified immunity claims as to all the claims.  Similarly, the Court should overrule the defenses of qualified immunity with regard to claims based upon the individual Board member's acts of censoring Plaintiff's acts on their respective Facebook pages.

Defendants' argument seems to be that the law was not clearly established that Plaintiff had a First Amendment right to participate in the Facebook public forums.  That

argument fails for several reasons.  First, the fact that this particular controversy concerned the expression of public debate on social media forums is not the *sine quo non* of the question. Instead, the issue is whether a reasonable person would have been aware that the law clearly establishes a First Amendment right for a member of the public to engage in debate, free of censorship or prior restraint, in a public forum sponsored by an elected public official.  The definition of categories of "public forums" and the First Amendment restrictions accordingly imposed had been well-defined. See, e.g., *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) The respective defendants encouraged constituents to engage with them on the social media pages, requested public input in that forum, and interacted with the public in the forum. Defendants could not with any credibility be surprised that the First Amendment pertains in those circumstances.

Secondly, the Courts considering First Amendment claims relating to social media had recognized the application of First Amendment to attempted censorship of public debate arising in the forum.  Defendants have cited no cases holding that the First Amendment is inapplicable and cannot rely upon a division in authority to contend that the law was unsettled. At best, they could contend that it was not clear to them whether the forums were legally considered "limited public forums."  However, that potential dispute is insufficient to provide the cover of qualified immunity, especially where the respective defendants treated the forums as a public forum, both inviting public comment and actively engaging with the public in the forums.

Finally, Plaintiff put the Defendants on notice of existing law by informing them of the caselaw and requesting that they cease their conduct.  Defendants continued their actions in spite of that notice and at their own risk. The Defendants should be denied qualified immunity on all counts because their actions violate clearly established law.

3.  *Defendants are not protected by legislative immunity.*

It is settled law that legislative immunity only applies to actions taken by officials in their legislative function while administrative or executive acts are not protected. *Rateree v Rockett*, 852 F.2d 946, 950 (1988) citing *Tenney v Brandhove*, 341 U.S. 367, 379 (1951).  Actions affecting an individual is executive in nature and not entitled to legislative immunity. *Bateson v Geisse*, 857 F.2d 1300, 1304 (1988); *Acvedo-Cordero v Cordero-Santiago,* 958 F.2d 20, 23 (1992); *Christian v Cecil County,* 817 F.Supp 1279, 1287-88 (1993).

"Not all actions undertaken by local governmental bodies that have legislative responsibilities are necessarily legislative." *Id.* (internal quotations omitted). Legislators are not, shielded from suit for administrative or executive actions. *Alexander v. Holden,* 66 F.3d 62, 66 (4th Cir.1995).  Legislators act in a legislative capacity when they adopt prospective legislative-type rules or act within a traditional legislative province.  *Roberson v. Mullins,* 29 F.3d 132, 134 (4th Cir.1994).  The individual acts complained of were directed solely at Plaintiff and were not legislative.  See *Cole v. Buchanan County School Bd.,* 504 F. Supp. 81 (W.D. Va. 2007), *citing Alexander v. Holden,* 66 F.3d 62, 66 (4th Cir.1995).

## D. Defamation

Count 8 sets out state law claims for defamation against Hornsberger, Rose, Devlin and Stephens.  Defendants challenge the sufficiency of the allegation, contending that the Complaint does not sufficiently set out the "exact words" alleged to be defamatory.  That argument fails because the Complaint clearly states the false accusations made and describes the circumstances in which those statements were made.  The allegations are as follows:

¶ 30.d  Once Davison publicized that Hornberger was hiding Davison's innocuous posts on official Facebook pages (e.g. Why doesn't LCPS publicize private sector equivalent pay for its teachers?), Hornberger falsely accused Davison of threatening his life. Hornberger contacted Defendant Devlin and together they arranged to have Devlin surveil Davison at future LCSB meetings and contract with LCSO for law enforcement presence as

well. Both would allege to off-duty LCSO officers providing security coverage for LCSB meetings and numerous LCPS staff that Davison had made threats against Hornberger's physical safety.

¶ 30.o.  In a June 23, 2015 LCSB meeting, Defendant Rose once again interrupted Davison during Davison's allotted speaking time and consumed substantially all of Davison's speaking time. Defendant Rose stated that her husband filed a criminal complaint against Davison with the Loudoun County Sheriffs Office alleging that Davison made threatening comments against Defendant Rose and Defendant Rose's children.

¶ 30.q.   Defendant Rose also contacted Davison's parents by phone and alleged Davison threatened her and her children.

¶ 30.r.   Following the Sheriff s office dismissal of her husband's criminal complaint, Defendant Rose contacted Davison's employer alleging Davison threatened Defendant Rose and her children.

¶ 30.s.  Principal Stephens and LCPS officials held a meeting with other staff members at Seldens Landing to discuss Davison. An employee of LCPS would report Davison to child protective services ("CPS") using information gathered in their official duties. In support of the report, the staff made written statements incidents such as Davison's 9-year-old daughter being unable to play kick-ball one day because she "was sent to school in rain boots."

¶172.  Defendant Rose, in late May of 2015, falsely and maliciously caused a criminal complaint to be filed against Plaintiff alleging that he had threatened her and/or his family. She also at that time contacted Plaintiff's parents and his employer and made similar allegations. Those false statements were repeated and republished in the fall of 2015.

¶173.  The following year. Defendant Rose once again falsely and maliciously accused

Davison of physically targeting her kids again in a public LCSB meeting. In the March 2016 meeting which was permanently recorded and broadcast to citizens of Loudoun and beyond.Rose claimed she "had to talk with her kids" about Davison's harassment and even show her kids pictures of Davison to protect them. She admitted her husband filed a criminal complaint supposedly based on concern for the "safety" of her children.

¶176.  Defendant Homberger falsely and maliciously accused Davison of threatening his life in a January 17, 2015 email sent to Homberger. Bill Fox relayed Homberger's allegations to Davison in a January 21, 2015 email and would later post these erroneous allegations in online chat forums. Fox alleged that Davison told Homberger he was"digging your own grave".  Davison never made those remarks nor any comments that could be construed in such a manner.

¶179.  Defendant Devlin falsely accused Davison of making threats against LCPS in March 2015 immediately after Davison called for the resignation of senior LCPS officials due to poor PISA test results. Devlin first requested LCSO ban Davison from all LCSB meetings and then requested LCSO implement extraordinary security measures anytime Davison attended such meetings. To justify these measures, she knowingly took snippets of Davison's online post out of context and claimed it represented Davison's violent intentions.

¶183.  Defendant Stephens signed all three No Trespass letters issued to Davison. In those letters, she made knowingly false statements about Davison's supposedly "threatening" comments. Stephens enforced the blocking of Davison's communications with his children's teachers including emails from Davison explaining to the teachers he represented no threat. None of Davison's children's teachers generated signed statements in support of his ban. Instead, Stephens included false hearsay statements regarding Davison's behavior in the teachers' classrooms at Seldens' Back-to-School night.

Those allegations are detailed and leave no question as to what the respective defendants are alleged to have said, and where. The distinctions which might be made between statements of fact and opinion, or hyperbole, can be parsed from the context. Accordingly, the Complaint meets the pleading standard required by Virginia law.

Defendants also argue that the claim should be dismissed under the qualified immunity provided by *Larimore v. Blaylck,* 259 Va. 268. 528 S.E.2d 119 (2000) to individuals making intercompany communications relating to an employment decision. A close look at the paramaters of that qualified immunity demonstrates that they are not entitled to that defense. *Larimore* describes the defense as follows:

[p]ublic policy and the interest of society demand that in cases such as this an employer, or his proper representatives, be permitted to discuss freely with an employee, or his chosen representatives, charges affecting his employment which have been made against the employee to the employer. There is a privilege on such occasions and a communication made under such circumstances, within the scope of the privilege, without malice in fact, is not actionable, even though the imputation be false, or founded upon erroneous information. The question is not as to the truth or falsity of the communication, or whether the action taken by the defendant with reference thereto or based thereon was right or wrong, but whether the defendant in making the publication acted in good faith or was inspired by malice. 528 S.E.2d at 121, quoting *Chesapeake Ferry Co. v. Hudgins,* 155 Va. 874, 906-07, 156 S.E. 429 (1931).

The defense is not available here for two reasons. First, the claims, as made, are that the Defendants acted intentionally and maliciously, making the false accusations for the purposes. The defense is not available for malicious acts. Secondly, the defense does not pertain to communications made to third-parties who do not have a part in making the decision being considered. "The issue in this regard was whether the privileged occasion was lost because communication of the statement to such an employee constituted communication or publication to

a third party. If so, liability for defamatory statements would attach regardless of malicious intent." Id. 528 S.E.2d at 122.

Here, the statements were not limited to the circle of decision-makers.  Statements were made in open public meetings, to law enforcement, to Plaintiff's family, and to Child Protective Service workers.  Stephens incorporated false accusations into the written letters to Plaintiff barring his entry onto school property, which letters were provided to law enforcement and which became public documents.

Defendants offer no explanation as to why the statements were made.  They bear the burden of the affirmative defense.  If statements are protected by qualified immunity as being made as part of a decision-making process, they bear the burden of explaining the process, the necessity and import of the statements to the process, and the role of the party to whom the statement was made as part of the process.  Such is not offered.  Legislative and sovereign immunity are not available to the Defendants for the same reasons as cited in (C) above.

### III.    CONCLUSION

For all the foregoing reasons, and for any additional reasons to be argued at hearing of this matter, Plaintiffs request this Court deny the Defendants' Motion to Dismiss.

**Brian C. Davison**

By Counsel  Michael A. Bragg /s/
       Michael A. Bragg VSB 16797
       Bragg Law
       P.O. Box 1866
       Abingdon, Virginia 24212
       276-628-9160
       bragglaw@bvu.net

**CERTIFICATE**

I hereby certify that this 24th day of June, 2016, I uploaded this Memorandum to the Clerk's ECF System to be served electronically on Counsel of record and caused a true copy to be delivered in person to:

Julia B. Judkins, Esq.
BANCROFT, McGAVIN, HORVATH & JUDKINS
9990 Fairfax Blvd., Suite 400
Fairfax, Virginia 22030


Michael A. Bragg /s/