IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BRIAN C. DAVISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16cv0540 (AJT/IDD) |
| | ) | |
| DEBORAH ROSE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Presently pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 23] (the "Motion").  As alleged in the Complaint, Plaintiff Brian Davison ("Davison") is the parent of two children who attend public elementary school in Loudon County, Virginia and claims that between 2015 and 2016, Defendants engaged in unconstitutional conduct that restricted his First and Fourteenth Amendment rights in violation of 28 U.S.C. § 1983 ("Section 1983").  He also alleges that four of the Defendants defamed him by making a variety of false accusations to his family, his employer, law enforcement, Loudon County's Child Protective Services ("CPS"), and the general public.  He has sued the Loudon County School Board (the "LCSB") and also certain members of the LCSB and school administration in both their official and personal capacities (the "Individual Defendants").[1]

---

[1] On December 16, 2016, the Court held a hearing on the Motion, following which it ordered supplemental briefing on the issues of (1) whether the dismissal with prejudice based on mootness in *Davison v. Loudoun Cnty. Sch. Bd.*, Case No. CL-98468 (Va. Cir. Ct. Dec. 22, 2015) was a final decision on the merits under Supreme Court of Virginia Rule 1:6; and (2) whether the filing of the presently pending action in this Court before the dismissal took place in *Davison* affects the scope of any potential res judicata effect of the dismissal with prejudice in that case.  [Doc. No. 34.]  The parties filed supplemental briefings on these issues as directed.  [Doc. Nos. 35-36.]

For the reasons set forth below, Davidson's claims in Counts I-VII against LCSB and the Individual Defendants in their official capacities are barred because of res judicata and sovereign immunity and are barred against the Individual Defendants in their personal capacities under the doctrine of qualified immunity. Those Counts will therefore be dismissed. As to the remaining Count VIII (defamation), the Court declines to exercise supplemental jurisdiction over that purely state law claim and dismisses that claim without prejudice. Accordingly, Defendants' Motion to Dismiss is granted with prejudice as to Counts I-VII and without prejudice as to Count VIII.

## I.      BACKGROUND

Davidson alleges the following, which the Court accepts as true solely for the purposes of the pending Motion.

Davison is a regular speaker at LCSB meetings during the public comments portion, and he regularly blogs about complaints, criticism, and conflicts he has with individuals on the LCSB and LCPS personnel. He created Facebook and Twitter accounts and used them to post hundreds of articles and comments in addition to posting thousands of comments in various other online forums such as in the comments sections of online newspapers. Amended Complaint [Doc. No. 21] ("AC") ¶¶ 23, 24, 213. He frequently speaks on topics related to student performance, "lack of transparency and local government," alleged undisclosed conflicts of interest on the part of LCSB members, school budgets, and violations of federal privacy laws, in addition to calling for resignation of LCPS officials and alleging violations of the Virginia Freedom of Information Act ("VFOIA"). *Id.* ¶¶ 23, 24a-c.

During the commencement of the 2014-15 academic year, Davison learned that LCSB denied receiving Student Growth Percentiles data[2] for the teachers it employed, which in fact it had been receiving.  *Id.* ¶ 12.  When Davison requested the information, LCSB claimed that VFOIA did not require it to disseminate the information, in any event.  *Id.*  After numerous unsuccessful attempts to obtain and discuss the information, Davison submitted requests to LCSB and the Virginia Board of Education under VFOIA.  *Id.* ¶ 18.  Both governmental agencies refused, and Davison then filed a Petition for Writ of Mandamus in Richmond Circuit Court.  Ultimately, the Richmond Circuit Court required the agencies to produce the requested documents and pay Davison $35,000.  *Id.* ¶ 19.

Upon Davison's receipt and review of the information, he requested that the Seldens Landing Parent Teacher Association ("PTA") hold an information night to disseminate the information about the school district to other parents.  *Id.* ¶ 22.  Defendant Tracy Stephens ("Stephens" or "Principal Stephens"), the principal of Seldens Landing Elementary School, informed the PTA that the information would reflect badly on the school and regularly prevented Davison from discussing the issue.  *Id.*

Davison continued to gather information about LCSB officials and LCPS and to disseminate this information to the public via social media and postings in the comments sections of on online news articles.  He also attended numerous PTA meetings, LCSB meetings, and other public meetings where he spoke during open comment sessions about the lack of transparency in local government, the undisclosed conflicts of interests of various LCSB members, the school

---

[2] Plaintiff alleges that federal law requires that local school governing bodies that receive federal education grants subject students to standardize testing and that school districts that receive waivers to the No Child Left Behind Act are required to provide student growth data summarizing teachers' success in preparing their students for such standardized tests to the teachers and to use that data in evaluating teacher performance.  AC ¶ 11.

budget, and violations of federal privacy laws designed to protect student privacy.[3]  Davison also filed four complaints against LCSB in Loudoun County Circuit Court, requesting that the state court require LCSB to comply with VFOIA disclosure laws and production requirements and Virginia's conflict of interest law.  *Id.* ¶ 24d.  Davison claims that Defendants used county funds and the powers and authority afforded to them by their employment with LCPS to prevent Davison from speaking at meetings, posting in public forums, participating in his children's education, and attending public events.[4]

In January 2015, Defendant Eric Hornberger ("Hornberger"), Davison's representative on LCSB, deleted Davison's comments that were critical of Hornberger from Hornberger's Facebook page without any advance notice.  Hornberger subsequently banned Davison from posting any comments at all on his LCSB Facebook page.  *Id.* ¶ 30c.  Some LCSB members, including Hornberger, did not hold open forums or community events, and so their Facebook pages became the primary means by which their constituents communicated with them.  After Davison brought Hornberger's Facebook ban to public attention, Hornberger accused Davison of threatening his life, which led to Defendant Suzanne Devlin ("Devlin"), the LCPS district security supervisor, surveilling Davison at future LCSB meetings and contracting with law enforcement to provide security at LCSB meetings as well.  *Id.* ¶ 30d.

In March 2015, Davison requested a complete list of Loudoun County teacher salaries via VFOIA.  Davison eventually filed a complaint in Virginia state court seeking those records, which resulted in a general denial of his VFOIA request and a much more narrowly focused

---

[3] At times during the open comment sessions, Davison disagreed with other commenters or ridiculed the Defendants and other LCSB employees for their refusal to discuss issues or efforts to suppress information.  During those discussions, Davison threatened to post the disagreements in a publicly viewable online forum or take them to court. Davison does not appear to have ever threatened physical harm or to have suggested violence, however, and he generally complied with rules regulating speaking time and other conduct.
[4] The Amended Complaint notes numerous occasions on which Plaintiff was not given the opportunity to ask questions during the designated question and answer time.

request being granted in July 2015.  *Id.* ¶ 21e.  Also in July 2015, Davison attended a PTA meeting where Principal Stephens ended a discussion about scores from standardized tests and advised Davison that they would not be discussed as they were not part of the agenda.  *Id.* ¶ 30a.

Over the spring and summer of 2015, Defendants William Fox, Deborah Rose ("Rose"), Jill Turgeon, and Kevin Kuesters, all LCSB members or members-elect at the time, all blocked Davison from posting any comments or questions on their respective LCSB Facebook pages.  *Id.* ¶ 30f.  Defendant Morse, who was campaigning for the upcoming LCSB election at the time, also blocked Davison from his LCSB campaign Facebook page.  *Id.*  In August 2015, two months prior to the LCSB election, LCPS officials deleted Davison's comments that were critical of them from LCPS's own Facebook page multiple times as Davison continued to repost them. *Id.* ¶ 30h.  Loudoun County Public Schools then stopped accepting any comments from the general public on its page for the entire duration of the 2015 election cycle.

Then, at the September 22, 2015 PTA meeting, Davison raised a question regarding student privacy, and Principal Stephens told him that she would return to his question.  Fifteen minutes later, Davison started to leave the PTA meeting, and Principal Stephens began to address him as he was leaving.  Davison apologized for having to leave early but voiced his concern for student privacy related to the standardized test policy.  Principal Stephens attempted to interrupt Davison, but Davison spoke over her as he left the meeting.  Principal Stephens chased after him as he was leaving the school cafeteria and reprimanded him for asking the question and threatened to ban him from the school.  Davison responded that he would protect his rights in federal court.  *Id.* ¶ 30w-y.

Following that event, the LCSB held a closed meeting that same evening to discuss Davison's "threat to public safety," and Principal Stephens issued a letter to Davison dated

5

September 29, 2015 stating that Davison was barred from entry onto any school board property for the remainder of the 2015-16 school year upon threat of arrest for criminal trespass. *Id.* ¶ 30z. Two subsequent letters correcting the first one were issued to Davison, and each of the three was issued without a prior hearing. The letters required Davison to request permission form Principal Stephens two days in advance of any desire to attend any matter related to his children at Seldens Elementary School. Davison alleges that he was prevented from attending his children's school performances, taking his children to the park located on LCPS grounds over the weekend, meeting with his children's teachers, dropping his children off at or picking them up from school, and bringing his children forgotten items to them during the school day, among many other inconveniences.

Within days of receiving the first "No Trespass" letter, Plaintiff appealed directly to Principal Stephens to lift the ban, and she denied that appeal in the final revised version of the letter dated October 14, 2015 (the "No Trespass Letter"). *Id.* ¶ 32a-b. The No Trespass Letter also provided instructions for initiating an "Appeal of Administrative Decisions" under paragraph B of LCSB Policy 2-20. After Plaintiff initiated that process, the Loudoun County School Board held a hearing on November 23, 2015, where committee members did not allow Davison to present his case or witnesses he had brought in his support and voted to uphold the No Trespass Letter. *Id.* ¶ 38. Plaintiff appealed that decision to the Loudoun County Circuit Court on a Petition for Judicial Review pursuant to Virginia Code § 22.1-87 on December 22, 2015. *See* Defendants' Memorandum of Law in Support of Their Motion ("Defs.' Mem. Supp."), Ex. 50 (the "Petition"). In the Petition, Davison claimed that the No Trespass Letter violated his First and Fourteenth Amendment rights.

6

On October 15, 2015, while Davison's appeal to Principal Stephens was pending and one day after the No Trespass Letter was issued, Davison attempted to pick up his children from school in his car after providing prior notification to Principal Stephens as required by the No Trespass Letter.  Principal Stephens and Defendant Devlin initially refused to release Davison's children to him and only agreed after a twenty-five-minute wait, after which time two officers fully equipped with guns, batons, and handcuffs escorted Davison's frightened children the one hundred yards from the school entrance to the school property line, accompanied by Principal Stephens.  AC ¶ 31c.  Davison claims the incident was emotionally trying for his children, who questioned whether he was in trouble with the police.

In a separate incident in October 2015, Principal Stephens and other school officials held another meeting to discuss Davison, after which an LCPS official reported Davison to CPS, apparently claiming that Davison's eight-year-old daughter was sent to school in rain boots and therefore could not play kickball with the other kids.  CPS investigated the matter and dismissed all allegations as unfounded.  *Id.* ¶ 30t-u.

During that same month of October 2015, Davison reported an incident of alleged perjury and fraud committed by Julia Judkins, counsel to LCSB in this action, as well as two other LCSB lawyers, to the Virginia State Police.  A special agent referred the case to Jim Plowman ("Plowman"), the Loudoun County Attorney, but Plowman took no action on the case.  In February 2016, Davison filed a civil rights complaint against Plowman in this Court under Section 1983 for censoring his comments on Plowman's public Facebook page.  The matter proceeded to a bench trial, after which the Court ruled in favor of Plowman and denied all relief sought by Davison.  *Davison v. Plowman*, No. 1:16cv180 (JCC/IDD), 2017 WL 1164480 (E.D. Va. Mar. 28, 2017) (Cacheris, J.).  The case is currently on appeal to the Fourth Circuit.

Defendant further alleges that on March 14, 2016, at a public LCSB meeting, a sheriff's officer was present to provide security at the meeting.  When Davison began criticizing Defendants Rose and Hornberger, Defendant Rose demanded that the sheriff's officer remove Davison from the premises.  The officer spoke to Davison, after which he refused to make Davison leave and dismissed Rose's demand as frivolous.   AC ¶ 30p.  Defendant Rose had also previously reported to the Sheriff's Office that Davison had been harassing her and threatening her family, a complaint which the Sheriff's Office had investigated and found to be "unfounded and frivolous."  *Id.* ¶ 30n-o.

On March 29, 2016, during another LCSB meeting, Defendant Rose said, "[Y]ou guys cheer for someone who makes my family fear their safety. . . . I have to show my kids a picture of speaker number two [Davison]."  *Id.* ¶ 198.  She then ended her remarks by telling the audience, "[Y]ou guys are disgusting."  *Id.*

On June 14, 2016, the No Trespass Letter expired, and on June 15, 2016, Davison entered Seldens Landing and distributed presents to his children's teachers without incident.  Principal Stephens and the assistant principal were subsequently reassigned to other schools, and "Davison had no expectations that another no-trespass would be issued or that [the new] Principal Brazina would take retaliatory actions similar to that of Principal Stephens."  *Id.* ¶ 40.

On July 8, 2016, this Court ordered that the present case be stayed pending resolution of the then-pending Loudoun County Circuit Court action and that Defendant's Motion to Dismiss be denied without prejudice.  [Doc. No. 11].  On August 5, 2016, the Loudoun County Circuit dismissed Plaintiff's case with prejudice.  *See* Defs.' Mem. Supp., Ex. 60 ("Order on Petition for Judicial Review").  Plaintiff represented himself *pro se* in the state court matter and signed the court's order "SEEN AND Agreed."  *Id.*

Following the state court's dismissal with prejudice, this Court ordered on September 9, 2016 that its stay be lifted for the sole purpose of allowing Defendants to renew their motion to dismiss.  [Doc. No. 17.]  The Defendants filed the presently pending Motion on October 26, 2016, moving to dismiss the Amended Complaint on the grounds that the Loudoun County Circuit Court's dismissal with prejudice of Davison's Petition bars at least seven of the eight counts of the Amended Complaint, that all counts fail to state a claim for any First or Fourteenth Amendment violations cognizable under 28 U.S.C. § 1983 or violations of Virginia state defamation laws, and that, in any event, certain Defendants enjoy immunity from any such claims.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994).  A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).  In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007).  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards,

which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (A complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face."); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

### III.   ANALYSIS

Plaintiff's Amended Complaint contains the following eight counts:

- <u>Count I</u>: Violation of the First Amendment (against Defendants LCSB, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, and Dekenipp)

- <u>Count II</u>: Violation of the First Amendment: Retaliation (against Defendants LCSB, Stephens, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, Dekenipp, and Devlin)

- <u>Count III</u>: Substantive Due Process: Fourteenth Amendment Right to Participate in Education of Children (against Defendants LCSB, Stephens, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, Sheridan, Dekenipp, and Devlin)

- <u>Count IV</u>: Violation of First Amendment and Substantive Due Process: Free Speech PTA Meetings (against Defendants LCSB, Stephens, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, Sheridan, Dekenipp, and Devlin)

- <u>Count V</u>: First Amendment and Substantive Due Process: Assembly (against Defendants LCSB, Stephens, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, Sheridan, Dekenipp, and Devlin)

- <u>Count VI</u>: Procedural Due Process (against Defendants LCSB, Stephens, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, Sheridan, Dekenipp, and Devlin)

- <u>Count VII</u>: Equal Protection (against Defendants LCSB, Stephens, Hornberger, Rose, Fox, Turgeon, Kuesters, Morse, Maloney, Dekenipp, and Devlin)

- <u>Count VIII</u>: State Law Defamation (against Defendants Rose, Stephens, Hornberger, and Devlin)

**A.      Whether Any of Plaintiff's Claims Are Barred By Res Judicata**

In considering the preclusive effect of a state court's dismissal with prejudice, federal courts apply applicable state law rules.  *See* 28 U.S.C. § 1738 (State judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.") (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982)).  Accordingly, this Court applies Virginia state law in considering Defendants' res judicata defense.

**1.      Whether Supreme Court of Virginia Rule 1:6 Governs These Proceedings**

The res judicata effect of a Virginia state court dismissal is set forth in Rule 1:6 of the Rule of the Supreme Court of Virginia,[5] titled "Res Judicata Claim Preclusion."  Va. Sup. Ct. R. 1:6 states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction, or occurrence, whether or not the legal theory or rights asserted in the second and subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claim in the prior proceeding depended, or the particular remedies sought.  A claim for relief pursuant to this

---

[5] The Virginia Code authorizes the Virginia Supreme Court to promulgate rules of practice.  Va. Code § 8.01-581.11 ("The Chief Justice of the Supreme Court of Virginia shall promulgate all necessary rules and regulations to carry out the provisions of this chapter.").  Part One of the Rules of the Supreme Court of Virginia is titled "General Rules Applicable to All Proceedings."

rule includes the set forth in a complaint, counterclaim, cross claim for third-party pleading.

*Id.* 1:6(a).

Rule 1:6, by its explicit terms, governs the res judicata effect of Plaintiff's Petition, as that Petition is clearly a "civil proceeding." But Plaintiff claims that the rule does not apply because Rule 1:6(b), by its terms, applies to "civil actions," *id.* 1:6(b), and his Petition was not a "civil action," even if a "civil proceeding" because it was an administrative appeal. In support of this position, he cites Rule 2A:4 ("Appeals Pursuant to the Administrative Process Act"), which states that a petition appealing an administrative decision must "be served (as in a civil action)," arguing that by virtue of this quoted language, an administrative appeal must be something other than a "civil action." Though creative, Plaintiff's hyper-textual argument ignores the very next rule, Rule 2A:5, which states that "[f]urther proceedings in an appeal under this Part Two-A shall be governed by the rules contained in Part Three." *Id.* 2A:5. Part Three, in turn, sets forth the rules applicable to "Practice and Procedure in Civil Actions." *Id.* 3. Rule 3:1 states:

> There shall be one form of civil case, known as a civil action. These Rules apply to all civil actions, in the circuit courts, whether the claims involved arise under legal or equitable causes of action, unless otherwise provided by law. These rules apply in cases appealed or removed to such courts from inferior courts whenever applicable to such cases. . . . Whenever in this Part Three the words "action" or "suit" appear they shall refer to a civil action, which may include legal and equitable claims.

*Id.* 3:1.

Rule 1:6 applies to Plaintiff's Loudon County action that was dismissed on August 5, 2016 with prejudice. It was a civil proceeding, and it was one that was subject to the general provisions of the Supreme Court Rules, which include Rule 1.6. The Petition itself was given a "case number," *see* Petition at 1, and as Rule 3.1 makes clear, there is only one form of a "civil case" and that one form is a "civil action."

### 2.    Whether Res Judicata Bars Any Claims in This Action

Under Virginia law, a valid res judicata defense claim has three elements: (1) there was a final judgment issued on the merits of a prior suit; (2) there is identity of parties between the prior and present suits; and (3) the claim was brought in the prior proceeding or arose out of the same conduct, transaction, or occurrence as the subject of the prior proceeding.  *See Lee v. Spoden*, 776 S.E.2d 798, 804-06 (Va. 2015).

The first issue is whether the dismissal with prejudice of Davison's Petition constitutes a final judgment on the merits of Plaintiff's case.  Under Virginia law, as a general rule, a dismissal of a defendant or claim "with prejudice" constitutes "an adjudication on the merits, and final disposition, barring the right to bring or maintain an action on the same claim or cause." *Reed v. Liverman*, 458 S.E.2d 446, 447 (Va. 1995).   Furthermore, a dismissal with prejudice generally "is as conclusive of the rights of the parties as if the suit had been prosecuted to a final disposition adverse to the plaintiff." *Id.*  However, the words "with prejudice" must "be considered in light of the circumstances in which they are used." *Id.*

There is nothing about the circumstances of this case that leads the Court to conclude that the state court's dismissal was anything other than a resolution that constituted a final adjudication on the merits. *Cf. Shutler v. Augusta Health Care for Women, P.L.C.*, 630 S.E.2d 313, 316 (Va. 2006) ("[W]hen an attorney lacked his client's authorization to consent to the dismissal of claims 'with prejudice,' the trial court was correct in treating the dismissal without prejudice.").  In the state court proceedings, Davison admitted that no "justiciable controversy" remained for the court to decide, Defs.' Mem. Supp., Ex. 1 ("Petitioner's Motion for Nonsuit") ¶ 7(a), and that he had "no reason to believe LCSB will issue another ban in bad faith," *id.*, Ex. 1 ¶ 16.  At the hearing on his motion to non-suit his Petition, Davison willingly agreed specifically

to a dismissal *with prejudice* after confirming that he "didn't want to waste the time of the Court, of the school board, or anybody else to be here," that he had "very productive meetings" with the new principal at his children's school, and that "it seems like there is no relief that I can get now that I'm allowed to go every day to the school, which was the point of my petition." *Id.*, Ex. 2 ("Petitioner's Motion for Nonsuit Hearing Transcript" or "Tr.") 5:9-10,11-14, 18-21. He never mentioned his pending federal action, and there is no merit to Davidson's contention that he informed the state court that he was dismissing his Petition in order to pursue his federal action.[6]

The fact that Davison's state court action arose out of an administrative appeal of LCSB's decision does not negate the res judicata effect it would otherwise have. As this Court concluded in *Martin-Bangura v. Commonwealth Dep't of Mental Health*, 640 F. Supp. 2d 729, 733-34 (E.D. Va. 2009) (Ellis, J.), which arose out of analogous facts,[7] under Supreme Court of Virginia Rule 1:6(a), res judicata preclusion applies to bar federal claims that "*could* have and *should* have brought . . . in the administrative hearing."[8] *Id.* at 740. Virginia courts have also found

---

[6] Plaintiff argues that "it is clear that the state court . . . was granting the motion for nonsuit because the appeal was moot." Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motion [Doc. No. 36] ("Pl.'s Supp. Mem. Opp'n") 8. However, the state court did not grant Davidson's motion for nonsuit; in fact, the Court explicitly told Davidson that it did not have the authority to enter a non-suit, Tr. 8: 6-7, and that the only option was "outright dismissal or withdrawing your appeal." Tr. 8:11-12. Davison explained that "I have written up three different orders: one with nonsuit, one with dismiss with prejudice, one with dismiss without prejudice. I would like to get it dismissed today in some way." Tr. 8: 16-19. The Court further explained, "I can't dismiss without prejudice," Tr. 8: 21-22, to which Davison responded, "Whatever the best way to get it off the docket is," Tr. 9: 3-4. Davison voluntarily opted for outright dismissal, and he gave every indication that he intended that resolution to put an end to his claims and as a final adjudication on the merits, whether or not his appeal is characterized as "moot."
[7] In *Martin-Bangura,* a former employee challenged his termination by filing a state grievance through the Virginia Department of Employment Dispute Resolution alleging wrongful discharge. The state hearing officer upheld the termination, and the plaintiff appealed that decision to the Circuit Court of Fairfax County. Before the state court entered judgment, the plaintiff filed a federal EEOC complaint under Title VII of the Civil Right act alleging discrimination. *Martin-Bangura,* 640 F. Supp. 2d at 732-34.
[8] Plaintiff now argues that "no claim under 42 U.S.C. § 1983 was made in the state court" and that "Davison did not submit his federal law claims to the state court for adjudication." Pl.'s Supp. Mem. Opp'n 8. First, Davidson's Petition, in fact, raised his First and Fourteenth Amendment claims in the state court action, which were dismissed with prejudice, although not within the context of a Section 1983 claim. Second, unlike collateral estoppel, res judicata bars both claims that have actually been litigated and those that *could* have been litigated. It is well established that claims arising under 42 U.S.C. § 1983 can be brought in a state court action. *See Haywood v. Drown,* 556 U.S. 729, 731 (2009); *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 506-07 (1982); *Maine v. Thiboutot,* 448 U.S. 1, 3 n.1 (1980).

that administrative agency decisions have no less preclusive, binding effect on future judicial proceedings than court decisions. *See, e.g.*, *Brock v. Voith Siemens Hydro Power Generation*, 716 S.E.2d 485, 488 (Va. Ct. App. 2011) (finding that res judicata principles apply to workers' compensation cases); *K & L Trucking Co., Inc. v. Thurber*, 337 S.E.2d 299, 302 (Va. Ct. App. 1985) ("Unless otherwise proscribed by statute, the relationship of the [Industrial Commission of Virginia] to an award is that of a court to a judgment during the term at which it is rendered."); *Cosby v. Bd. of Zoning Appeals*, No. 8027, 1985 WL 306836, at *1 (Va. Cir. Ct. July 26, 1985) (considering "[d]ecisions of the Board of Zoning Appeals" and finding that "[t]he doctrines of res judicata, collateral estoppel and stare decisis apply to proceedings such as these"); *see also Brooks v. Arthur*, 611 F. Supp. 2d 592 (W.D. Va. 2009), *vacated on other grounds*, 626 F.3d 194 (finding that Rule 1:6 barred the plaintiffs' Section 1983 retaliation claim where the plaintiffs had previously litigated a discrimination claim through a state grievance procedure). It is therefore of no moment that Davison's first opportunity to present his claims came in the form of an LCSB hearing and his subsequent appeal to the Virginia state court. For all these reasons, the Court concludes that the dismissal of his state court Petition with prejudice constituted a final adjudication on the merits.

The next issue is the scope of the preclusion, and for that purpose, the Court must consider the conduct, transaction, or occurrence that defines the scope of the preclusive effect on other proceedings. "The proper approach asks 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 897 (Va. 2017) (citation omitted). In that regard, for the purposes of Supreme Court of Virginia Rule 1:6, the "conduct, transaction, or occurrence" that

defines the preclusive effect are those events described in Plaintiff's Petition that he filed in the

Loudoun County Circuit Court on December 22, 2015.  Because all of the conduct, transactions,

or occurrences described in Plaintiff's Amended Complaint in this action are reflected in

Plaintiff's state court proceeding that was dismissed with prejudice on December 22, 2015, res

judicata bars all of Plaintiff's claims in this action that are based on events before December 22,

2015, viz., all claims except those arise out of events that took place after December 22, 2015.

These claims not barred under the doctrine of res judicata include Davidson's defamation claims

and his claims based on the alleged blocking and/or removal of Davison's Facebook postings on

pages maintained by LCPS and by Individual Defendants who served as members of LCSB.

Plaintiff's state court proceedings were filed only against Defendant LCSB, and the next

issue is whether the res judicata effect extends to any of Plaintiff's claims against the Individual

Defendants, either in their official capacities or individual capacities.  Based on settled law, all of

Davidson's claims against the Individual Defendants, sued in their official capacities, are barred

under the doctrine of res judicata, but not his claims against them in their individual capacities.

In that regard, the Plaintiff specifically alleges that these Individual Defendants held official

positions within the LCPS system or were members of LCSB and were acting on behalf of LCSB

with respect to the no trespass letter and the events leading up to the issuance of that no trespass

letter.  For that reason, the res judicata effect extends to Davidson's claims against them in their

official capacities.  *See Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) (finding privity

between government entity and individual employees sued in their official capacities).  There is

no privity, however, between the LCSB and the Individual Defendants sued in their personal

capacities, and the Court must consider these Individual Defendants' defense that they enjoy

qualified immunity with respect to Davidson's claims.  *Id.* at 200-01 (finding no privity between entity and individual employees sued in their individual capacities).

### B.  Sovereign Immunity with Respect to Counts I-VII Against Individual Defendants in Their Official Capacities

Under the Virginia Code,

[t]he members of the governing bodies of any locality or political subdivision and the members of boards, commissions, agencies and authorities thereof and other governing bodies of any local governmental entity . . . shall be immune from suit arising from the exercise or failure to exercise their discretionary or governmental authority as members . . . .  However, the immunity granted by this section shall not apply to conduct constituting intentional or willful misconduct or gross negligence.

Va. Code § 15.2-1405.

Here, the Individual Defendants are immune from lawsuit as to Counts I-VII in their official capacities.[9]  They qualify as "members of boards . . . and authorities thereof," the suit "aris[es] from the exercise or failure to exercise their discretionary or governmental authority as members," and their conduct does not constitute "intentional or willful misconduct or gross negligence."  LCSB had the statutory authority to ban individuals like Davison from entering the premises it used for its meetings and to take the various actions of which Davison now complains.  The issue is not whether Defendants were correct or justified in their decisions to take these actions or exercised their authority appropriately but whether Plaintiff's allegations are sufficient to make plausible his claim that they engaged in intentional or willful misconduct or gross negligence.  The Plaintiff has failed to allege facts that make plausible his claim that the Individual Defendants engaged in intentional or willful misconduct or gross negligence as to his claims in Counts I-VII.  Counts I-VII filed against Individual Defendants in their official capacities are therefore also dismissed based on sovereign immunity.

---

[9] Even if res judicata did not serve to bar claims against Individual Defendants based on events alleged to have occurred prior to December 22, 2015, those claims would be independently barred by sovereign immunity.

**C.      Counts I-VII Against Individual Defendants in Their Personal Capacities**

For the reasons set forth above, none of the claims Plaintiff alleges against Individual Defendants in their personal capacities are barred by res judicata or sovereign immunity. Nevertheless, Individual Defendants claim that they are immune from suit in their personal capacities under Section 1983 under the doctrine of qualified immunity.  "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Specifically, "[q]ualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (citation omitted).  In that regard, the Court must consider (1) whether the allegations underlying Plaintiff's claims, if true, would constitute violations of federal statutory or constitutional rights and (2) whether those violations were of "clearly established" rights, "of which a reasonable person would have known."  *Id.* at 307.

Here, the law is less than settled as to whether the Plaintiff had a right to post on a Facebook page maintained by a public official and that this right was violated when those postings were removed or when Plaintiff was prevented from posting his comments.  Plaintiff contends that Facebook is a public forum.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion [Doc. No. 26] ("Pl.'s Mem. Opp'n") 12.  Traditional public forums include streets, sidewalks, and parks which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *Perry Educ. Ass'n v. Perry Local Educators'*

18

*Ass'n*, 460 U.S. 37, 45 (1983) (citation omitted) (internal quotation marks omitted).  Limited or designated public forums are "public property which the state has opened for use by the public as a place for expressive activity."  *Id.* at 45 (citation omitted).  Where there is no traditional history of use of a space as a public forum, "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse."  *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1984).

It is not clear as a legal matter whether the Facebook pages at issue in this litigation can be said to constitute either type of public forum.  In any event, it cannot be said that such a First Amendment right was a "clearly established" right, "of which a reasonable person would gave known."  These Individual Defendants are therefore entitled to qualified immunity for the actions they took against Plaintiff with respect to their Facebook pages.[10]  Therefore, Counts I-VII filed against Individual Defendants in their personal capacities are dismissed.

### D.      State Law Defamation Claim (Count VIII)

Plaintiff's only remaining claim in his Amended Complaint is his Virginia state law defamation claim set forth in Count VIII.  In support of that claim, he alleges that Defendant Rose accused him of threatening her and her family in May 2015 and attempted to wrongfully use a sheriff's officer to remove him from an LCSB meeting on March 14, 2016.  Davison also alleges that Defendant Rose made disparaging comments about him during an LCSB meeting on March 29, 2016, that Defendant Hornberger falsely accused Davison of threatening his life in January 2015, and that an identified school official or LCSB member frivolously reported him to Child Protective Services in October 2015.

---

[10] The Court does not now decide whether Individual Defendants are entitled to qualified immunity as to their alleged actions giving rise to Plaintiff's state law defamation claim (Count VIII), discussed below.

This Court does not have original subject matter jurisdiction over Plaintiff's state law defamation claim, as there is no federal question or diversity jurisdiction over that claim. This Court may exercise jurisdiction over that claim only based on its supplemental jurisdiction under 28 U.S.C. § 1367(a), however. While supplemental jurisdiction exists under Section 1367(a), 28 U.S.C. § 1367(c)(3) grants district courts the specific discretion not to exercise that jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." In this case, the Court has dismissed all claims over which it has original jurisdiction and declines to exercise its supplemental jurisdiction over the only remaining claim, which is a Virginia state law claim that arises within the context of a core state function, the administration of the public school system. Accordingly, Plaintiff's defamation claim in Count VIII is dismissed without prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Counts I-VII are dismissed and Count VIII is dismissed without prejudice.

The Court will issue an appropriate order.

The Clerks is directed to forward a copy of this Memorandum Opinion to all counsel of record.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 28, 2017

20